STATE of Utah, Plaintiff and Appellee,

v.

Efrain VILLARREAL, Defendant
and Appellant.

No. 920730–CA.

Court of Appeals of Utah.

July 27, 1993.

Certiorari Granted Oct. 9, 1993.

Ronald J. Yengich and Bradley P. Rich, Salt Lake City, for defendant and appellant.

Jan Graham and J. Kevin Murphy, Salt Lake City, for plaintiff and appellee.

Before BENCH, GARFF and JACKSON, JJ.

GARFF, Judge:

Efrain Villarreal appeals his convictions of aggravated kidnapping, in violation of Utah Code Ann. § 76–5–302 (1990), rape of a child, in violation of Utah Code Ann. § 76–5–402.1 (1990), and sodomy on a child, in violation of Utah Code Ann. § 76–5–403.1 (1990), all first degree felonies. We reject Villarreal's challenges and affirm his convictions.

## FACTS

On appeal, we view the facts in a light most favorable to the jury's verdict. *State v. Johnson*, 821 P.2d 1150, 1153 (Utah 1991); *State v. Verde*, 770 P.2d 116, 117 (Utah 1989). We recite the facts accordingly.

Sometime between the late night hours of September 8, 1990, and the early morning hours of September 9, 1990, thirteen-year-old E.L. and her friend Sarah attended a party at Blake Bedient's apartment in Midvale, Utah. During the party, E.L. drank large amounts of alcohol and became intoxicated. While at the party, Bedient,

Matthew Roberts, and Villarreal took E.L. to a car and drove away. After dropping Roberts off, Bedient and Villarreal drove E.L. to a cave in Butterfield Canyon located in Salt Lake County, where they sexually assaulted her.

During the initial investigation, E.L. described the sexual assault as a forcible abduction and rape by five men. E.L. identified Roberts and Bedient from a photo lineup arranged by Midvale Police Detective Scott Hodgkinson, after which the police picked up Roberts and Bedient and advised them of their *Miranda* rights. Bedient, after waiving his rights, confessed to having sexually assaulted E.L. and identified Villarreal as a co-participant. Continuing the investigation, Detective Hodgkinson spoke with E.L. again, informing her of the account given by Roberts and Bedient concerning Villarreal. E.L. then reported, for the first time, that Villarreal had participated in the sexual assault.

On September 14, 1990, Detectives Hodgkinson and Tom Cowan apprehended Villarreal at the juvenile probation office and advised him of his *Miranda* rights. Upon being advised of his rights, Villarreal informed the officers that he wished to talk to them at that time. Villarreal denied that he had anything to do with the sexual assault when the officers informed him that he had been inculpated by the other suspects. The officers then informed him that he was under arrest and took him to the Salt Lake County Jail. During the ride to the jail, which took approximately fifteen minutes, the officers encouraged Villarreal to tell them his side of the story before the prosecuting attorney got involved. Villarreal again denied any participation in the sexual assault.

When they arrived at the jail, Villarreal was booked and placed in a holding cell. Detective Cowan told Villarreal that he had one more chance to talk to them before they referred the case to the prosecuting attorney. Villarreal motioned to Detective Cowan, indicating that he wanted to talk, after which Villarreal confessed that he sexually assaulted E.L. Detective Cowan then notified Detective Hodgkinson of the confession, after which they drove to the Midvale police station. Arriving at the station, Detective Cowan typed out Villarreal's confession on his personal computer and signed it in the presence of Detective Hodgkinson.

Villarreal moved to suppress the confession, claiming it was obtained in violation of his Fourth Amendment rights. The trial court denied the motion, ruling that the interrogation was "one fairly continuous sequence" and that the effect of the *Miranda* warnings was not "attenuated from the time given until the confession." The court further ruled that there was no evidence that Villarreal did not understand the warnings and that any conflict in police officer testimony concerning the content of the confession would be a "matter of weight, not admissibility."

During jury voir dire, the court asked the prospective jurors whether any of their immediate family or close friends "had ever been the victims of a sexual assault or been charged with sexual assault," to which nine jurors affirmatively responded. The court questioned each of the nine prospective jurors further about their acquaintance with the individuals who had been sexually assaulted and whether their experiences would influence them one way or the other. Juror number one, who ultimately served as foreperson of the jury, had a daughter that was a victim of sexual assault, while juror number two had a friend whose child had been a victim. Both, however, indicated that they could still be impartial. Juror number three, whose neighbor was a victim of sexual assault, indicated that she would not be influenced by her experience. As a victim of sexual assault, juror number four indicated that there was a "possibility" she could be influenced. Juror number five, whose niece was a victim, stated that he would try to not let it influence him, but it might. Having a brother that was recently charged with sexual assault, juror number six said he would not be influenced. Juror number seven, who had several neighbors and a newspaper carrier that were victims, stated that he would "possibly" be influenced. Having two children that were vic-

tims, juror number eight indicated that she could be impartial. Juror number nine, a victim, indicated that it "might be kind of difficult" for him to make a decision.

While in chambers, Villarreal's counsel challenged jurors seven, eight, and nine for cause, which the court granted. Only juror nine was further questioned by the court in chambers. Concerned by juror nine's demeanor when questioned by the court about his experience with sexual assault, Villarreal's counsel specifically requested that juror nine be questioned further in chambers. Following the in-chambers conference, Villarreal's counsel peremptorily challenged jurors three, four, and five, and the prosecution peremptorily challenged juror six. As a result, jurors one and two were seated on the jury.

As part of its case in chief, the prosecution called Bedient as a witness. Bedient, who, prior to being called, had entered a no-contest plea and had been sentenced to the Utah State Prison, persisted in refusing to answer questions despite directives by the court to do so. After holding Bedient in contempt, the court allowed the prosecution, over defense counsel's objections, to ask Bedient leading questions concerning the assault, apparently with reference to Bedient's confession previously given to Detective Hodgkinson. By so doing, the prosecution elicited Bedient's statement that Villarreal had participated in the assault. Thereafter, the prosecution called Detective Hodgkinson as a witness. During the prosecution's examination of Detective Hodgkinson, the court, over defense counsel's hearsay objection, allowed the prosecution to elicit Bedient's confession. In the process of overruling the objection, the court admitted the confession as a statement against interest pursuant to Utah Rule of Evidence 804(b)(3). Following trial, the jury returned a verdict of guilty as charged. This appeal followed.

## PLAIN ERROR

Villarreal claims, without supporting analysis or authority, that the trial court committed plain error by not requiring a more extensive examination of the prospective jurors concerning potential biases. Defense counsel neither objected nor asked permission to personally voir dire the jury pursuant to Utah Rule of Criminal Procedure 18(b).[1] Nevertheless, we decline to address Villarreal's claim of plain error because of the failure to support his argument with legal analysis or authority. *See State v. Amicone*, 689 P.2d 1341, 1344 (Utah 1984); *State v. Price*, 827 P.2d 247, 248–50 (Utah App.1992); Utah R.App.P. 24(a)(9).

## INEFFECTIVE ASSISTANCE OF COUNSEL

For the first time on appeal, Villarreal argues that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Such a denial, he claims, resulted from trial counsel's failure to (1) challenge for cause certain prospective jurors, two of whom actually sat on the jury; (2) object to references about Villarreal being a juvenile probationer; (3) object to testimony regarding previously dismissed charges; and (4) object to E.L.'s competence to testify.

■ Generally, an appellant cannot raise an ineffective assistance of counsel claim for the first time on appeal because the trial record is insufficient to allow the claim to be determined. *See State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991). An appellant, however, can raise such a claim if the trial record is adequate to permit determination of the issue and there is new counsel on appeal. *Id.; State v. Johnson*, 823 P.2d 484, 487 (Utah App. 1991). Because the trial record is adequate

---

1. Rule 18(b), Utah Rules of Criminal Procedure, provides:

    The court may permit counsel or the defendant to conduct the examination of the prospective jurors or may itself conduct the examination. In the latter event, the court may permit counsel or the defendant to supplement the examination by such further inquiry as it deems proper, or may itself submit to the prospective jurors additional questions requested by counsel or the defendant.

and Villarreal is represented by new counsel, we reach the merits of the claim.[2]

▇▇▇ To establish an ineffective assistance of counsel claim, defendant must show, first, that counsel rendered a deficient performance that fell below an objective standard of reasonable professional judgment, and second, that counsel's deficient performance prejudiced defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Templin,* 805 P.2d 182, 186 (Utah 1990). In making a showing that counsel rendered a deficient performance, the burden is on defendant to demonstrate that counsel's representation falls below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064; *State v. Frame,* 723 P.2d 401, 405 (Utah 1986). In so doing, defendant must specifically identify the acts or omissions of counsel that fall outside the wide range of professionally competent assistance. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Frame,* 723 P.2d at 405. To show that counsel's alleged deficiency was sufficiently prejudicial, defendant must affirmatively show that there is a "reasonable probability" that, but for counsel's errors, the result would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Frame,* 723 P.2d at 405. A reasonable probability is a probability sufficient to undermine confidence in the reliability of the verdict. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Frame,* 723 P.2d at 405.

▇▇ We indulge "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Otherwise, the "distorting effects of hindsight" would make it all too easy to conclude that counsel's assistance was unreasonable. *Id.*

### Jury Selection

▇▇ Villarreal claims that trial counsel rendered ineffective assistance of counsel by failing to challenge jurors one, two, three, four, and five for cause because of their acquaintance with someone that had been a victim of sexual assault.[3] Juror one's daughter had been a victim of sexual assault, juror two's friend's daughter had been a victim, juror three's neighbor had been a victim, juror four had been a victim, and juror five's niece had been a victim.

The record supports the conclusion that counsel's representation did not fall below an objective standard of reasonableness. Jurors one, two, and three represented to the court during voir dire that they could be fair and impartial. Although jurors four and five stated they would try not to be influenced by their experiences, it is plausible that counsel believed their responses did not rise to the level justifying challenge for cause, or counsel decided not to challenge them because of reasons not apparent on the face of the record. *See State v. Tennyson,* 850 P.2d 461, 468 (Utah App.1993) (discussing assumption that counsel acted competently if a rational basis for counsel's performance can be articulated). Indeed, there may have been some other intangible reason for wanting them on the jury, such as attentiveness, edu-

---

**2.** Pursuant to the recent adoption of Utah Rule of Appellate Procedure 23B, effective October 1, 1992, we can, on our own motion, remand a case for the trial court to enter findings of fact relevant to a claim of ineffective assistance of counsel. According to the rule, however, the motion is "available only upon an allegation of facts constituting ineffective assistance of counsel not fully appearing in the record on appeal." Utah R.App.P. 23B(a). No such allegation is made in the instant case. *Cf. State v. Garrett,* 849 P.2d 578, 581–82 (Utah App.1993) (discuss-ing the requirements for remand pursuant to Rule 23B).

**3.** Rule 18(e)(14), Utah Rules of Criminal Procedure, in relevant part, provides that a challenge for cause may be taken when "a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging...."

cation, or assertiveness. *See Boggess v. State*, 655 P.2d 654, 656 (Utah 1982) (rejecting claim that counsel rendered ineffective assistance of counsel because "it may well have been part of his strategy to not seek a mistrial"); *see also State v. Moritzsky*, 771 P.2d 688, 692 (Utah App.1989) (indicating that ineffective assistance of counsel claims succeed when there is a "lack of any conceivable tactical basis" for counsel's conduct).

■ This is not a case in which trial counsel stood by while the jury selection process ran its course. Trial counsel submitted fifty-nine jury voir dire questions and actively participated with the court and opposing counsel in chambers concerning the apparent abilities of various prospective jurors to serve. During the in-chambers conference, trial counsel successfully challenged for cause five prospective jurors, including jurors seven, eight, and nine, who, along with the other six, affirmatively responded to the court's inquiry that they had either experienced sexual assault or personally knew someone who had. In fact, trial counsel specifically requested further in-chambers questioning of juror nine that eventually led to juror nine's exclusion from the jury. Apparently, trial counsel discerned some qualitative difference between those jurors he challenged for cause and those he did not. Furthermore, counsel could have reasonably believed the assertions of impartiality.[4] Given the strong presumption that trial counsel's conduct might be considered sound trial strategy and based on the disadvantaged view we have of the jury selection process via an inanimate record, we conclude that trial counsel's performance did not fall below an objective standard of reasonable professional judgment.

### References To Juvenile Record

■ Villarreal claims that trial counsel rendered ineffective assistance of counsel by failing to object to references during trial about Villarreal's status as a juvenile probationer. Specifically, Villarreal points to the testimony of Detectives Hodgkinson and Cowan, who testified that they apprehended Villarreal at the juvenile probation office. Such references, Villarreal claims, were prejudicial in that they made him appear more inclined to commit the crimes.

However, the record indicates that trial counsel's strategy, in part, was to discredit Detectives Hodgkinson and Cowan by focusing on Detective Cowan's mistaken report that the detectives initially questioned Villarreal at the Midvale Police station, when in fact the questioning took place at the juvenile probation office. In the process of emphasizing this mistake, trial counsel consciously elected not to preclude information concerning Villarreal's juvenile status. *See, e.g., State v. Julian*, 771 P.2d 1061, 1063–64 (Utah 1989); *State v. Medina*, 738 P.2d 1021, 1023–24 (Utah 1987); *State v. Pascual*, 804 P.2d 553, 556–57 (Utah App.1991). Thus, such strategy, which was deliberately exercised, falls well within the standard of reasonable professional performance.

### Previously Dismissed Charges

■ Villarreal also claims that he received ineffective assistance due to trial counsel's failure to object to evidence concerning the previously dismissed charges in the information that Villarreal raped and sodomized E.L.[5] During trial, several wit-

**4.** Villarreal also claims that he received ineffective assistance of counsel due to trial counsel's failure to request jury voir dire concerning views about alcohol use and racial attitudes. Both claims are without merit. The record indicates that part of trial counsel's strategy was to emphasize the effect of E.L.'s intoxication on her testimony. Thus, trial counsel may have hoped for jurors with anti-alcohol opinions. The record also reveals that juror number ten, the prospective juror that alerted the court during voir dire about the potential problem of racial bias, was ultimately removed for cause on trial counsel's motion. In response, the court alleviated further problems concerning potential racial bias by asking the rest of the prospective jurors whether there was anything that would prevent them from being "totally fair" in the case, to which none of the prospective jurors responded.

**5.** After the preliminary hearing, the rape and sodomy charges were dismissed for insufficient evidence. Villarreal was ultimately charged as a party, rather than a perpetrator, to the sexual assault.

nesses testified, without objection, that Villarreal sodomized E.L. The prosecutor, during closing argument, also referred to the evidence that Villarreal sodomized E.L. In addition, E.L. testified, without objection, that Villarreal had forced her to have vaginal intercourse with him while in the cave. Villarreal argues that such evidence was inflammatory and prejudicial.

The record again indicates that trial counsel apparently elected not to object to such references in order to pursue the trial strategy of attacking the investigation of E.L.'s sexual assault, ultimately casting doubt on key prosecution witnesses. In fact, trial counsel, as part of this strategy, deliberately elicited evidence that Villarreal sodomized E.L. in an attempt to show that E.L.'s memory of the sexual assault was actually reconstructed from information provided by detectives. We therefore conclude that trial counsel's performance was not deficient and did not fall below an objective standard of reasonableness in this regard.

### Competency To Testify

■ Finally, Villarreal argues, pursuant to Utah Rules of Evidence 602[6] and 403,[7] that trial counsel rendered ineffective assistance of counsel in failing to object to E.L.'s competence to testify. Villarreal claims that E.L. was incompetent to testify due to her intoxication during the sexual assault.

Rule 602 "merely requires that the witness have the opportunity and the capacity to perceive the events in question." *State v. Eldredge*, 773 P.2d 29, 33 (Utah), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989). E.L.'s detailed account of the sexual assault given soon thereafter and her detailed testimony at the preliminary hearing and trial demonstrate that she clearly had both the opportunity and the capacity to perceive the events surrounding the sexual assault. Under the circumstances, E.L.'s incomplete memory did not make her testimony so unreliable that the potential for unfair prejudice outweighed its probative value. Furthermore, trial counsel may well have decided not to challenge E.L.'s competence to testify based at least in part on the trial strategy of discrediting E.L.'s memory of the sexual assault. The fact that trial counsel's chosen strategy and tactics "did not produce an acquittal does not compel the conclusion that counsel was ineffective." *State v. Jones*, 823 P.2d 1059, 1063 (Utah 1991). Based on the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance and based on the record before us, we conclude that trial counsel's conduct was not deficient.

### CONFESSION

Villarreal challenges the trial court's admission of his confession given to Detective Cowan. Specifically, Villarreal argues that the court clearly erred in finding that he waived his right to remain silent, and that he understood what those rights were under *Miranda*. He further argues that the court erred by finding Detective Hodgkinson more credible than Detective Cowan.

■ We do not disturb the trial court's underlying factual findings unless they are clearly erroneous. *State v. Thurman*, 846 P.2d 1256, 1271 (Utah 1993). In contrast, we review the court's legal conclusions for correctness. *Id.*

Detective Hodgkinson testified that prior to the interview and after informing Villarreal that he was a suspect, he read Villarreal his *Miranda* rights from a form. After advising him of his rights, Detective Hodgkinson asked Villarreal whether he understood his rights, to which Villarreal responded that he did. At the suppression

---

**6.** Utah Rule of Evidence 602 provides in part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself."

**7.** Villarreal contends that E.L.'s testimony was so unreliable that the potential for unfair prejudice substantially outweighed the probative value.

hearing, Detective Cowan testified that after Detective Hodgkinson read Villarreal his rights, Villarreal refused to answer any questions. In contrast, Detective Hodgkinson testified that after reading Villarreal his rights, he asked Villarreal if he wanted to talk to him, to which Villarreal responded, "Yeah." During the ensuing interrogation, which lasted five to six minutes, Villarreal denied having anything to do with the sexual assault. Detective Hodgkinson then informed Villarreal that he had enough to arrest him and took him into custody.

▆▆▆▆ Although Detective Cowan's testimony conflicted with Detective Hodgkinson's, the trial court obviously found Detective Hodgkinson's version of the facts more credible. Nothing in the record indicates the court clearly erred in giving more credence to Detective Hodgkinson's testimony regarding Villarreal's waiver of his right to remain silent.[8] Furthermore, the record supports the court's finding that Villarreal understood the *Miranda* warnings.[9]

▆▆▆▆ Next, Villarreal argues, in the alternative, that if there was a confession, it was coerced and therefore inadmissible.[10] However, the trial court's implicit determi-

nation that Villarreal voluntarily confessed is supported by substantial evidence. Both detectives denied coercing Villarreal to confess. Although the detectives repeatedly encouraged Villarreal to talk, there is no evidence that the detectives threatened or promised Villarreal in order to obtain his confession. Thus, the trial court correctly, although implicitly, concluded that Villarreal's confession was freely given.[11]

## CO–PARTICIPANT CONFESSION

Finally, Villarreal argues that the trial court erred in admitting the confession of Bedient, a co-participant in the sexual assault. He contends that the court, by so doing, denied him his right to confrontation under the Sixth Amendment to the United States Constitution, article I, section 12 of the Utah Constitution, and Utah Code Ann. § 77–1–6(1)(d) (1990). Trial counsel preserved this issue by timely objection.

▆▆▆▆ As with any other evidentiary ruling, an erroneous decision to admit or exclude evidence does not result in reversible error unless the error is harmful. *See* Utah R.Evid. 103(a); Utah R.Crim.P. 30(a); *State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992). Harmless errors are "errors which,

**8.** In the face of a factual dispute bearing upon credibility, the trial court has the responsibility to "appropriately weigh the evidence and assess the credibility of the witnesses." *State v. Allen,* 839 P.2d 291, 299 (Utah 1992).

**9.** The trial court found that from the time the detectives advised Villarreal of his rights until he confessed, which appears to have been at the most twenty-five minutes, was "one fairly continuous sequence." The record supports our determination that the trial court did not clearly err in making such a finding. *See State v. Carter,* 776 P.2d 886, 889–90 (Utah 1989) (confession admissible after several hours of questioning over span of two days following *Miranda* warning and waiver).

**10.** On appeal, the State suggests that the issue of voluntariness was not presented to the trial court and is therefore waived on appeal. After reviewing the record, however, we conclude that the issue was adequately presented to the trial court. At the hearing on the motion to suppress, trial counsel argued that "the State bears the burden of proof, by a preponderance of the evidence, that the defendant's confession

is voluntary...." In response, the prosecutor argued the following: "Well your Honor, it seems to me this is quite a clear cut, straightforward matter of confession, admissions that were completely voluntary from all the testimony that was given. There has been no evidence they were involuntary in any way as actual voluntariness or legal voluntariness." The prosecutor further argued, "Your Honor, I believe the cases are entirely in support of the State's position, this was a voluntary statement by the defendant.... It is entirely legal and voluntary as well." Although the court failed to specifically rule on the issue, it did so implicitly by denying Villarreal's motion to suppress.

**11.** Villarreal also contends that his confession should have been suppressed because the State failed to contemporaneously create a record of his confession. Although we do not endorse the particular manner in which Villarreal's confession was recorded, *see State v. Carter,* 776 P.2d 886, 891 (Utah 1989), there is no basis, in light of the totality of circumstances surrounding the confession, for suppression of the confession merely because it was not contemporaneously recorded.

although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *State v. Verde,* 770 P.2d 116, 120 (Utah 1989); *accord Hamilton,* 827 P.2d at 240. In other words, "[f]or an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight,* 734 P.2d 913, 920 (Utah 1987). In making such a determination, we consider a host of factors, including " 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.' " *State v. Hackford,* 737 P.2d 200, 205 (Utah 1987) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)).

■■■ We need not reach the merits of Villarreal's contention because even if Bedient's confession were improperly admitted, the error was harmless. When the evidence at trial is considered in light of the previously cited factors, there is no reasonable likelihood that the outcome would have been different absent Bedient's confession. Excluding Bedient's confession, which was essentially cumulative in nature, the evidence at trial consisted of E.L.'s detailed and lengthy testimony about the circumstances of the sexual assault in addition to Villarreal's voluntary confession concerning his participation. Any error in admitting Bedient's confession was harmless.

## CONCLUSION

We hold that (1) Villarreal failed to support his claim of plain error with legal authority or analysis as to the trial court's failure to more extensively voir dire the jury concerning potential biases; (2) Villarreal failed to carry his burden of showing a denial of his right to effective assistance of counsel; (3) the trial court properly admitted Villarreal's confession; and (4) any error regarding the trial court's admission of Bedient's confession was harmless. Having considered Villarreal's other claims, we conclude that they are meritless. *See State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989). Accordingly, Villarreal's convictions are affirmed.

JACKSON, J., concurs.

BENCH, J., concurs in result.