**STATE of Utah, Plaintiff and Respondent,**

v.

**Efrain M. VILLARREAL, Defendant and Petitioner.**

No. 930433.

Supreme Court of Utah.

Jan. 25, 1995.

Jan Graham, Atty. Gen., J. Kevin Murphy,
Asst. Atty. Gen., Salt Lake City, for plaintiff.

Ronald J. Yengich, Hakeem Ishola, Salt Lake City, for defendant.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

STEWART, Associate Chief Justice:

The Utah Court of Appeals affirmed the convictions of Efrain M. Villarreal for aggravated kidnapping, rape of a child, and sodomy on a child in violation of Utah Code Ann. §§ 76–5–302 (aggravated kidnapping), 76–5–402.1 (rape of a child), and 76–5–403.1 (sodomy on a child). *State v. Villarreal,* 857 P.2d 949 (Utah Ct.App.1993). We granted certiorari to review the Court of Appeals' decision in holding (1) that violations of the confrontation clause arising from the presentation of out-of-court statements to the jury were harmless error, (2) that the contemporaneous commemoration of defendant's confession was not required, and (3) that defendant was not denied the effective assistance of counsel. We affirm.

On the night of September 8, 1990, thirteen-year-old E.L. went to a party with friends at Blake Bedient's apartment in Midvale, Utah. She consumed a large quantity of alcohol and became highly intoxicated. After her friends left, an incoherent E.L. was taken in a car to Butterfield Canyon in Salt Lake County, where she was raped, sodomized, and beaten. On September 9, E.L. was taken to Primary Children's Hospital. A medical examination confirmed she had been raped, sexually abused, and sodomized. It also showed she had been beaten and bitten and her throat had been cut. Because she was thirteen, she was too young to legally consent to sexual relations. Utah Code Ann. § 76–5–406(9).

At trial, Villarreal's guilt was established by (1) his confession, (2) the confession of Blake Bedient, a co-perpetrator, and (3) the victim's testimony. Villarreal confessed to holding E.L.'s hands while Bedient raped her and to having her perform fellatio on him. Bedient's confession included statements that Villarreal had held E.L.'s hands while Be-

dient performed sexual intercourse upon her. E.L. testified that Villarreal and others took her to Butterfield Canyon and that Villarreal (1) held her hands while Bedient performed sexual intercourse upon her, (2) raped her himself,[1] (3) made her perform fellatio on him, (4) beat her, and (5) cut her throat with a knife to discourage her from reporting him to the police.

Villarreal argues that the Court of Appeals erred in holding that it was harmless error to allow Blake Bedient's confession, which inculpated both himself and Villarreal, to be presented to the jury through (1) the prosecutor's highly assertive, leading questions, which the prosecutor knew Bedient would not answer, and (2) a police officer's testimony relating Bedient's confession.

## I. CONFRONTATION CLAUSE

Blake Bedient was called by the prosecution to testify. Bedient previously had been convicted of kidnapping and sexually abusing E.L. At the time of Villarreal's trial, Bedient was serving a sentence at the Utah State Prison. On the stand, Bedient refused to answer questions about the September 8 party at his apartment and subsequent events involving E.L. and Villarreal. The trial court established that Bedient's counsel had informed him that he had no constitutional right to refuse to answer questions concerning those events. Bedient refused to testify on the ground that "there's also a law called self-preservation where I am at. If you don't [observe it], you don't last very long." The court told him that he would be held in contempt if he refused to testify. Bedient responded, "Yes, sir, I understand that. But I still [do not] waive my right to self-preservation." Although the court held him in contempt, he would not testify.

Over defendant's objection, the prosecution propounded a long series of factual propositions in the form of leading questions to Bedient that were based on his confession. For example, the prosecutor put the following questions to him:

---

1. Defendant's conviction for rape was based solely on his holding E.L.'s hands while Bedient raped her and not on E.L.'s additional testimony that Villarreal also performed sexual intercourse on her.

[I]sn't it true, Mr. Bedient that you ... and Mr. Villarreal took [E.L.] up to a cave in Butterfield Canyon? ... And isn't it true that in the canyon in that cave in the canyon, while Mr. Villarreal held [E.L.'s] hands you performed sexual intercourse upon her? ... And don't you recall telling Detective Hodgkinson that in fact you did have sexual intercourse with [E.L.] while Mr. Villarreal held her hands? ... And isn't it true that you stated that [Villarreal] and you both "screwed" her in the cave? ... And isn't it true that you stated that [Villarreal] had a knife and was always going, "Hey, I've got this knife here and if you don't do what I say—" ... And isn't it true that you told Detective Hodgkinson, [Villarreal] was saying, "We are going to cut you. We are going the (sic) kill you?" ... Isn't it true that after you finished with [E.L.] you left the cave, left [Villarreal] there with her?.

The only responsive answer Bedient gave was to deny that Villarreal held E.L.'s hands while Bedient raped her and to state that he, Bedient, had not previously stated otherwise.

The prosecution then called Officer Hodgkinson, who testified over objection that Bedient had given an out-of-court statement confessing to kidnapping E.L. and performing other sex acts on her while another person held her hands. According to Officer Hodgkinson, Bedient denied having E.L. perform oral sex on him or biting and beating her. The officer also testified that Villarreal was the only other person present at the time.

Villarreal argues that the prosecutor's improper use of leading questions on the pretext of questioning Bedient and Officer Hodgkinson's testimony of Bedient's confession violated Villarreal's right to confront his accuser under the Utah Constitution article 1, section 12[2] and the Sixth Amendment of the United States Constitution.[3] We agree that the prosecutor's conduct, coupled with the officer's testimony, violated Villarreal's state and federal constitutional rights to confront his accuser, but we hold that admission of this testimony was harmless error.

When Bedient refused to answer the prosecutor's questions, even though the refusal was without legal justification, the prosecutor was not entitled to present to the jury what he thought Bedient should have testified to, especially knowing he would not answer. *Douglas v. Alabama*, 380 U.S. 415, 416–17, 85 S.Ct. 1074, 1075–76, 13 L.Ed.2d 934 (1965), controls this case. There, a co-perpetrator had been previously convicted. When called to testify, the co-perpetrator, without privilege, refused to answer. The prosecutor asserted a series of factual propositions in the form of leading questions that were highly inculpatory to the defendant and supposedly were based on the co-perpetrator's confession. The prosecutor then called two police officers to testify to the witness's confession. *Id. Douglas* held that the Sixth Amendment was violated because the defendant had been denied the right to cross-examine his accuser. *Id.* at 418, 85 S.Ct. at 1076–77.

In like manner, the prosecutor here asserted that Bedient had confessed that he and Villarreal kidnapped E.L., they took her to Butterfield Canyon, and he raped her while Villarreal held her hands. The prosecutor also asserted that Villarreal raped E.L. and threatened to kill her and that Villarreal must have sodomized and beaten her because Bedient had said he did not.

The prosecutor was not a witness, was not sworn, and was not subject to cross-examination as to the truthfulness of his recounting

**2.** Article I, section 12 of the Utah Constitution provides:

In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to be confronted by the witness against him....

**3.** The Sixth Amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witness against him....

Bedient's statements. Similarly, although Bedient was sworn, it was impossible for Villarreal to cross-examine him as to the truthfulness of the statements. The factual propositions asserted in the prosecution's leading questions may very well have been considered truthful statements, given Bedient's nonresponsiveness. *See id.; cf. Slochower v. Board of Higher Educ.*, 350 U.S. 551, 557–58, 76 S.Ct. 637, 640–41, 100 L.Ed. 692 (1956). Because Villarreal had no way to cross-examine the truthfulness of the statements, he was denied his right of confrontation under our state and federal constitutions.

■ The prosecutor's misconduct was immediately followed by Officer Hodgkinson's testimony relating Bedient's confession. That evidence tended to affirm the prosecutor's own factual assertions when questioning Bedient. Villarreal argues that the Court of Appeals erred by affirming the trial court's admission of this testimony. The State responds that the testimony was properly admitted under Rule 804(b)(3) of the Utah Rules of Evidence as a statement against penal interest. We hold that it was error to admit Bedient's extrajudicial confession insofar as it was inculpatory to Villarreal.

■ It is fundamental that to ensure accuracy and reliability, testimony should be given under oath in open court with the opportunity for cross-examination. *State v. Sanders*, 27 Utah 2d 354, 359, 496 P.2d 270, 273 (1972). Although the confrontation clauses of the state and federal constitutions protect similar values, those clauses are not coterminous with the hearsay rule and its exceptions. *See Idaho v. Wright*, 497 U.S. 805, 814, 110 S.Ct. 3139, 3145–46, 111 L.Ed.2d 638 (1990); *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *State v. Lenaburg*, 781 P.2d 432, 435 (Utah 1989). As a general proposition, exceptions to the hearsay rule do not violate the confrontation clause. On the other hand, the right of a defendant to confront an accuser may bar evidence that might otherwise be admissible under an exception to the hearsay rule. *Wright*, 497 U.S. at 814, 110 S.Ct. at 3145–46; *see Green*, 399 U.S. at 155–56, 90 S.Ct. at 1933–34.

*State v. Kendrick*, 538 P.2d 313 (Utah 1975), is an example. In *Kendrick*, the defendant's co-perpetrator was tried first and later gave testimony inculpating the defendant. At Kendrick's trial, the co-perpetrator refused to testify and was held in contempt of court. The co-perpetrator's prior testimony inculpating Kendrick was then read to the jury. The Court held that Kendrick's right to confront his accuser had been violated. *Id.* at 315.

■ Federal cases are similar. In *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the United States Supreme Court held that the admission of an out-of-court confession of a co-defendant inculpating the defendant violated the Confrontation Clause of the federal constitution. Relying on *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), *Lee* reasoned that because the co-defendant/declarant may "gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross examination." 476 U.S. at 541, 106 S.Ct. at 2062. Thus, under *Lee*, a rebuttable presumption of unreliability arises when an individual confesses to known authorities under known investigative circumstances. *Id.* at 544, 106 S.Ct. at 2063–64.

■ In this case, the circumstances of Bedient's confession do not rebut the presumed unreliability of his statement. *See United States v. Flores*, 985 F.2d 770, 782 (5th Cir. 1993). As testified by Officer Hodgkinson, Bedient voluntarily confessed after having been read his *Miranda* rights. Although Bedient confessed to raping E.L., he denied participating in other wrongdoing, i.e., removing E.L.'s clothing, biting her, or having her perform oral sex on him, but stated that those acts had been done by another. That other person must have been Villarreal, who was the only other person present. In short, although Bedient's confession was voluntary, the circumstances do not demonstrate that it was also free from a desire, motive, or impulse on Bedient's part to mitigate the appearance of his own guilt by spreading blame to Villarreal or overstating Villarreal's involvement. *See Lee*, 476 U.S. at 544, 106

S.Ct. at 2063–64. Thus, to avoid violation of Villarreal's right to confront his accuser, Bedient's statements must have been subjected to cross-examination. Consequently, calling Officer Hodgkinson to relate such a presumptively unreliable confession on the heels of the prosecutor's highly inappropriate assertions of fact compounded the violation because it enhanced the danger that the jury would treat the prosecutor's improper factual assertions and Bedient's refusals to answer as proving the truth of those assertions. *See Douglas,* 380 U.S. at 420, 85 S.Ct. at 1077.

The State argues that because Bedient took the stand and could be cross-examined, Villarreal was not denied any constitutional rights. It is true that defense counsel was able to obtain responsive answers from Bedient to some questions. Bedient testified that he did not fear Villarreal and that his refusal to testify was based on his fear of others. Bedient was wholly nonresponsive, however, with respect to assertions about Villarreal, E.L., and the events of the night of the crime. Because Bedient did not affirm or deny the prosecution's declarations attributed to Bedient, Villarreal had no effective opportunity to cross-examine him on facts that were central to establishing Villarreal's guilt. In sum, the Court of Appeals correctly held that the trial court erred in admitting Officer Hodgkinson's testimony of Bedient's confession and in allowing the prosecutor to assert incriminating factual propositions through leading questions to an unresponsive witness.

▮▮▮▮ We address whether Villarreal's convictions should be reversed because of those errors. For an error to be reversible, it must be harmful. *See* Utah R.Evid. 103(a); Utah R.Crim.P. 30(a); *State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992). The Court of Appeals held that an error does not require reversal if it is " 'sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.' " *Villarreal,* 857 P.2d at 958 (quoting *State v. Verde,* 770 P.2d 116, 120

(Utah 1989)). That rule, however, does not govern errors like those before us that are constitutional in nature, and therefore, the Court of Appeals erred by applying it. Where "the error in question amounts to a violation of a defendant's right of confrontation guaranteed by the Sixth Amendment to the United States Constitution, its harmlessness is to be judged by a higher standard, i.e., reversal is required unless the error is harmless beyond a reasonable doubt." *State v. Hackford,* 737 P.2d 200, 204 (Utah 1987) (citing *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728–29, 23 L.Ed.2d 284 (1969)).[4] This higher standard does not require reversal solely because we might imagine a single juror whose decision hinged on Bedient's confession. Rather, "we look to what seems to us to have been the probable impact of the confession on the minds of the average juror." *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

Bedient's story only impacts Villarreal's conviction for rape because Villarreal held E.L.'s hands while Bedient had sex with her. Bedient's story did not affect Villarreal's conviction for kidnapping or his conviction for sodomy because it is undisputed that Villarreal and Bedient took E.L. to Butterfield Canyon and because Bedient left before the sodomy occurred and had no personal knowledge of it. Consequently, we need only decide whether the inability of Villarreal to cross-examine Bedient requires reversal of Villarreal's conviction for rape on the basis of his having held E.L.'s hands while Bedient raped her.

▮▮▮▮ A number of factors determine whether an error was harmless beyond a reasonable doubt, including

> "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence collaborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course,

---

4. As in the past, we do not now address what standard applies to a harmless error analysis for the claim of state constitutional error. *State v. Verde,* 770 P.2d 116, 121 n. 8 (Utah 1989). Be-

cause the burden under the federal constitution of proving the error was harmless beyond a reasonable doubt is satisfied, we need not address the issue.

the overall strength of the prosecution's case."

*Hackford,* 737 P.2d at 205 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)).

Bedient's story was not critical to proving the prosecution's case that Villarreal held E.L.'s hands while she was raped. The victim's own testimony established that Villarreal held her hands while Bedient raped her. This was confirmed by Villarreal's own confession. These are the same sources of evidence on which the jury relied to convict Villarreal of sodomy. Ironically, the only evidence that Villarreal did not hold E.L.'s hands came from Bedient. The only responsive answers he gave about the crimes were to deny that Villarreal held E.L.'s hands while he raped her and to deny that he had ever said otherwise. In sum, the case against Villarreal was so overwhelming that the violations of his right to confront his accuser were harmless beyond a reasonable doubt.

## II. VILLARREAL'S CONFESSION

Villarreal argues that his confession is inadmissible because his *Miranda* rights were violated and the police failed to record his confession. Detective Cowan testified that Villarreal confessed to having E.L. perform fellatio on him and to holding her down while Bedient raped her. Villarreal's confession was typed several hours after it was given and was signed by the officer to whom Villarreal confessed, but not by Villarreal.

### A. Miranda Rights

 Villarreal asserts that he refused to speak with the police after being arrested and therefore his confession was obtained in violation of his *Miranda* rights. The police may question an individual who agrees to speak with them after being read his *Miranda* rights. *See State v. Wood,* 868 P.2d 70, 83–85 (Utah 1993). Detective Cowan and Officer Hodgkinson arrested Villarreal, read him his rights, and questioned him. Initially, when asked if Villarreal agreed to talk with the police, Detective Cowan answered, "At that time he refused to answer any questions." Detective Cowan then clarified his answer by stating that Villarreal did not refuse to answer, he did answer but denied his involvement in the crime. Denying involvement is different from refusing to answer. Defendant's initial hesitance to answer questions, which may be a natural reaction to being questioned, does not indicate that his right to remain silent was violated. *State v. Whitsel,* 339 N.W.2d 149, 152 (Iowa 1983). Denying involvement is an answer that may properly prompt further questioning from the police. Any lack of clarity about whether Villarreal agreed to speak with the police was resolved by Officer Hodgkinson, who testified that when he asked Villarreal, "[D]o you wish to talk with me now?" Villarreal responded, "Yeah." Thus, defendant's *Miranda* rights were not violated.

### B. Contemporaneous Recording

 Villarreal also asserts that his confession was inadmissible because the police failed to record it contemporaneously. The record of Villarreal's confession was made sometime after it was given, but the same day. The police officer to whom Villarreal confessed typed and signed it, but failed to have Villarreal sign it. At trial, Villarreal's counsel argued that Villarreal denied the confession ever occurred. We hold that the testimony concerning Villarreal's confession was properly admitted. *See Holcomb v. State,* 307 Md. 457, 515 A.2d 213, 214 (1986) (delayed commemoration of confession to police that was not signed by defendant was properly admitted); *Boyd v. State,* 430 N.E.2d 1146, 1148 (Ind.1982) (same).

We have previously addressed the importance of making a contemporaneous record of a defendant's confession, whether by written or electronic means. *See State v. Carter,* 776 P.2d 886, 891 (Utah 1989). In *Carter,* we criticized the failure of investigating officers to record the defendant's confession verbatim and endorsed the practice of tape recording confessions, at least when possible. Such practice better ensures that the confession is accurate when presented to the finder of fact and removes some of the errors that naturally occur in the memories of all persons in recalling events, especially precise words. If

an officer's memory of a confession is distorted, inaccurate, or incomplete, whether because of the lapse of time or a variety of psychological factors, the defendant may be forced into the dilemma of having to waive his right not to testify or allowing an erroneous account of the confession to go to the jury. Recording confessions "guarantees that constitutional rights are protected and justice is effected." *Id.* Thus, electronic or other recording of a confession is a simple and inexpensive means of preserving critical evidence in an accurate form and should be implemented wherever possible.

■ Villarreal argues that contemporaneous recording of a confession is not only a desirable practice, but is mandated by the Utah Constitution. A majority of courts ruling on the issue have held that contemporaneous verbatim commemoration of confessions is not constitutionally required. *People v. Raibon*, 843 P.2d 46, 49 (Colo.Ct.App. 1992); *see In re R.J.C.*, 210 Ga.App. 286, 435 S.E.2d 759, 761 (1993); *State v. Rhoades*, 119 Idaho 594, 809 P.2d 455, 462 (1991); *People v. Eccles*, 141 Mich.App. 523, 367 N.W.2d 355, 356 (1984); *Williams v. State*, 522 So.2d 201, 208 (Miss.1988); *Jimenez v. State*, 105 Nev. 337, 775 P.2d 694, 696–97 (1989); *State v. Gorton*, 149 Vt. 602, 548 A.2d 419, 422 (1988). Only Alaska constitutionally requires contemporaneous recording of an accused's statements to police. *See Stephan v. State*, 711 P.2d 1156, 1162 (Alaska 1985). States that have required tape recordings or their equivalents have done so legislatively. *See, e.g.,* Tex.Code Crim.P.Ann. art. 38.22, § 3 (Supp.1995).

Notwithstanding the desirability of recording confessions, it is neither practicable nor possible to require contemporaneous recordings in all instances. When a formal confession is given in a police station, it could, and should, be recorded. But confessions, and admissions short of a confession, can be made anywhere at unexpected times and places where formal recording is impossible. Barring all such evidence would deprive the courts of much evidence that is generally reliable. Thus, we hold that contemporaneous recording of a confession is not mandated by the Utah Constitution.

## III. OTHER ISSUES

■ Villarreal argues that other evidentiary errors cumulatively warrant a new trial. The three errors are trial counsel's failure to object to police references to defendant's probationary record, to the admission of allegations that had been dismissed at a preliminary hearing, and to the victim's testimony. In essence, Villarreal argues, as he did to the Court of Appeals, that he received ineffective assistance of counsel. The Court of Appeals addressed these arguments and stated, "To establish an ineffective assistance of counsel claim, [a] defendant must show, first, that counsel rendered a deficient performance that fell below an objective standard of reasonable professional judgment, and second, that counsel's deficient performance prejudiced defendant." *Villarreal*, 857 P.2d at 954; *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Templin*, 805 P.2d 182, 186 (Utah 1990). Villarreal does not show that his trial counsel's performance fell below an objective standard of reasonable professional judgment. As the Court of Appeals reasoned, trial counsel did not object to references to defendant's probationary record, to allegations that had been dismissed at preliminary hearings, or to the victim's testimony because he wished to exploit circumstances surrounding that testimony to impeach the respective witnesses. *Villarreal*, 857 P.2d at 955–56. The Court of Appeals concluded, and we agree, that such a deliberate strategy falls well within the standard of reasonable professional performance. *Id.*

Affirmed.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur.