## STATE v. FRESHWATER.*

No. 1675. Decided May 14, 1906 (85 Pac. 447).

1. CRIMINAL LAW — CONTINUANCE — ABSENCE OF WITNESSES — DILIGENCE.—A motion for a continuance because of the absence of witnesses was properly denied, where the affidavit in support of the motion, though reciting that defendant caused a subpoena to be issued for the witnesses, did not show that he communicated or attempted to communicate with them, nor that any other effort was made to procure their attendance, though they had expressed a willingness to testify, and where no facts were stated tending to show that there was a probability that they would be present at the ensuing term of court, or that their testimony could be procured within a reasonable time.

2. SAME — EVIDENCE — HANDWRITING —IDENTIFICATION.—On an issue as to whether a certain letter was written by defendant, a witness who had seen defendant write but once was competent to testify.

*Competency of witnesses to handwriting, see note, 63 L. R. A. 693.

3. SAME — TYPEWRITTEN LETTERS — MACHINE USED — EXPERT TESTI-
    MONY.—On an issue as to whether certain typewritten letters were
    written by defendant, testimony by an expert that a comparison of
    the letters with the work done by a certain typewriting machine in
    the town where defendant lived indicated, because of defects in the
    type and in the alignment thereof, that the letters were written on
    the machine in question, was competent.

4. SAME—SECONDARY EVIDENCE.—Where, in a prosecution for adultery,
    the state claimed that certain letters had been written by defend-
    ant's alleged paramour to defendant and notified the defendant to
    produce these letters, which he did not do, evidence by the woman
    who wrote them as to their contents was admissible.

5. SAME—LETTERS — INDENTIFICATION — SUFFICIENCY.— In a prosecu-
    tion for adultery, the state claimed that a number of letters had been
    written by defendant's alleged paramour to him, and that she had
    received replies containing incriminating matter, all but one of
    which replies were typewritten, and all of which were unsigned.
    The alleged paramour, though admitting that she had seen defendant
    write but once, testified that the handwriting of the only letter not
    typewritten was that of defendant, and that the address on the
    envelope of one of the typewritten letters was also in defendant's
    handwriting.  *Held*, that the letters were admissible in evidence
    against defendant.

APPEAL from District Court, Fourth District; J. E.
Booth, Judge.

John W. Freshwater was convicted of adultery, and ap-
peals.

AFFIRMED.

*S. A. King,* for Appellant.

*M. A. Breeden,* Attorney General, and *D. D. Houtz,* Dis-
trict Attorney, for the State.

McCARTY, J.

The defendant was convicted of the crime of adultery al-
leged to have been committed on June 18, 1904, at Provo,
Utah, with one Delia Nance, an unmarried woman, and was
sentenced therefor to a term in the penitentiary. The record

shows that the case was set for trial for December 5, 1904, but on motion of the district attorney, a continuance was granted until December 21, 1904. Upon the case being called for trial on the last-mentioned date the defendant made a motion, supported by affidavit, for a continuance on the ground that three of his witnesses were absent from the state. The court denied the motion and a trial was had, which resulted in a disagreement of the jury. The case was, thereupon, immediately set for trial January 9, 1905. When the case was called for trial on said date, the defendant again moved for a continuance on the ground that his three witnesses were still absent from the state, and that he could not safely proceed to trial without them. The court overruled the motion and the trial was proceeded with. On January 13, 1905, a verdict of guilty was rendered. A motion for a new trial having been made and overruled, defendant appeals to this court.

The action of the court in denying defendant's motion for a continuance is now assigned as error. In support of the motion defendant filed an affidavit in which he, in substance, alleges he is informed that all three of the witnesses therein named are temporarily absent from the state; that one of the witnesses, Alto Carter, was in Colorado; that affiant (defendant), immediately upon the cause being set for trial (December 23, 1904, sixteen days before the case was called for trial ), caused a subpoena to be issued for said witness but that the "time was so short that it was impossible for this affiant to obtain the presence of said witness at this term of court, notwithstanding the fact that said witness has expressed a willingness to be present in court and testify in his behalf." The affidavit then proceeds to recite what affiant expected to prove by the absent witness. It does not appear, however, that defendant communicated or attempted to communicate with the witness, notwithstanding he was advised of her whereabouts and that she had expressed a willingness to be present at the trial and testify. Nor does it appear that any effort was made to procure her attendance. Neither does the affiant state facts tending to show that there was any probability that this, or either of the other two absent witnesses,

would be present at the then next ensuing term of court, or that there was any probability that the evidence of these witnesses could and would be procured within a reasonable time. The same lack of diligence is shown with respect to procuring the attendance of the other two absent witnesses as was shown in the case of Alto Carter. Under these circumstances it was not an abuse of discretion for the court to deny the motion for a continuance. (1 Spelling, New Tr. & App. Pro., 137-140.)

Delia Nance, the woman with whom it is alleged defendant committed the crime of which he stands convicted, was called as a witness and testified that defendant was criminally intimate with her on June 8, 1904, at Provo, Utah, and that, as a result of their criminal conduct, she became pregnant; that defendant after he was arrested for the crime prevailed upon her to go to her home in Colorado in order to avoid testifying against him; that on the night of September 5, 1904, the defendant took her to Springville in a buggy, at which point he gave her money, and she took the train for Colorado; that it was understood before they parted that defendant would ship her trunk to her later on; that soon after arriving at her destination in Colorado she received, through the United States mail, an unsigned typewritten letter postmarked at Provo, Utah; that she had seen the defendant write, and that the address on the envelope was in his handwriting; that soon after the receipt of this letter she wrote a letter to defendant, deposited the same in the postoffice, postage prepaid, and addressed to him at Provo, Utah, and stated to him in the letter that she wanted her trunk and if he didn't send it she would return to Provo and get it, and that she made inquiries about the criminal case pending against defendant; that soon thereafter she received another unsigned typewritten letter postmarked Provo, Utah, which was introduced in evidence, and, in part, states: "Your trunk will be there in a few days, so you need not worry about that. . . . There hasn't been anything done yet and won't if you don't come back for awhile. Of course, after this is settled in court, it would be all right for you to come. . . .

She also testified that she wrote several other letters to the defendant, deposited the same in the post office, postage prepaid, and addressed to him at Provo, Utah, in which she discussed their relations and trouble, the contents of which letters it is unnecessary to here set out in detail, and that in due course of mail she received unsigned letters postmarked Provo, Utah, which were introduced in evidence and in which the subject-matter of her own letters was discussed; that one of the letters and the address on the envelope in which it came she recognized as being in the handwriting of defendant. A demand was made by the state on defendant to produce the letters alleged to have been written to him by the prosecutrix, but he denied having written any letters to her or of having received any from her. The court, thereupon, permitted the witness to testify to the contents of the letters which she claimed were written by her to defendant. E. H. Holt, who was shown to be an expert on typewriting and familiar with the mechanism of typewriting machines, was called as a witness by the state, and, over defendant's objections testified that, in his opinion, the affidavits sworn to by defendant and filed in the case in support of his motions for continuance and the typewritten letters received by Delia Nance, hereinbefore referred to, and the addresses on some of the envelopes in which the letters were posted, were written on the same typewriter. He testified, and his evidence is not disputed that the letters and affidavits showed that the type used in printing them was of the same class and size, that certain letters (type) were defective, broken and out of repair, that certain other letters were out of alignment, and the spacing between certain letters was too great; that those peculiarities and defects appeared in the affidavits and typewritten letters and the addresses referred to which were typewritten; that he examined twenty-four typewriting machines in Provo City, one of which had the same defective type which made lettering, lining, and spacing in exact conformity with the peculiarities in these respects of the affidavits, letters, and addresses on the envelopes. He also testified, that, while it might be possible for two machines out of repair to have

precisely the same defects and to produce the same faulty printing in every respect that characterized the letters and affidavits mentioned, such a thing or coincidence is not at all probable.

It is now urged that the court erred in permitting Delia Nance, who claimed to have seen the defendant write but once, to testify that the letter written by hand which she claimed was received by her, and the address on the envelope in which it came, was in the defendant's handwriting. The rule is well settled that writing may be proved by evidence of a witness who has seen the person write. In 1 Greenleaf on Ev., 577 it is said:

"It is held sufficient for this purpose that the witness has seen him write but once and then only his name. The proof in such case may be very light, but the jury will be permitted to weigh it."

In 2 Jones on Ev., section 559, the author says:

"But whatever degree of weight his testimony may deserve, which is a question exclusively for the jury, it is an established rule that if one has seen the person write, he will be competent to speak as to his handwriting; and this is true, although the impression on the witness may be faint and inaccurate. Thus, the testimony has been admitted although the witness has not seen the person write for many years before the trial and although he has only seen the person write on a single occasion, and even though he only saw the person write his name, or even his surname."

And again:

"It is not necessary that the witness should be an expert. These are matters affecting not the admissibility but the weight of such testimony."

McKelvey, in his work on Evidence, p. 360, says:

"It has from early times been settled that no great degree of familiarity with handwriting is required to render a witness competent to give an opinion. If he has seen the person write a single time, it has generally been held sufficient." (*Hammond v. Varian*, 54 N. Y. 398; *McNair v. Commonwealth*, 26 Pa. 388; *Rideout v. Newton*, 17 N. H. 71; *Pepper v. Barnett*, 22 Grat. [Va.], 405; *Keith v. Lothrop*, 10 Cush. [Mass.], 453; *Hopkins v. Megquire*, 35 Me. 78; Edelen v. Gough, 8 Gill. [Md.], 87; 17 Cyc. 157.)

Appellant's next assignment is that the court erred in permitting witness Holt to testify with respect to the letters and affidavits referred to having been written on a certain typewriting machine then in use in Provo, Utah, the town in which defendant was residing at the time the letters were written and affidavits made. While it is true that this evidence, standing alone, did not prove that defendant wrote the letters, yet the state was entitled to have it submitted to the jury as a circumstance tending to show, when considered in connection with other facts and circumstances in the case, that the letters were written at the same town where they purported to have been posted, and in which the record shows defendant resided, and thereby tending to establish a link in the chain of evidence necessary to connect the defendant with the writing and sending of the letters.

Appellant's next complaint is that the court erred, first, in permitting Delia Nance to testify to the contents of the letters she claimed to have written to defendant from Colorado; and, second, by permitting the state to introduce in evidence the unsigned letters which she claimed to have received through the mails in Colorado purporting to be in answer to the letters which she claimed to have written to the defendant. The state having made a demand on the defendant to produce the letters in question, and he having failed to do so, it was proper for the state to introduce testimony of their contents. Nor do we think the court erred in permitting the state to introduce in evidence the unsigned letters received by her which were posted at Provo, Utah. The contents of these letters, as shown by the record, related to and were strictly confined to matters of an incriminating character against defendant which were peculiarly within his knowledge and concerning which the prosecutrix claimed to have written him from Colorado, and about which she testified they had talked over together before she went to Colorado. Under these circumstances, and in view of her testimony that she identified one of the letters which was not typewritten as being in the handwriting of defendant, the contents of which were concerning matters directly connected with the

subject-matter of the correspondence, we think it was proper to resort to and read in evidence the contents of the letters as tending, when considering in connection with the contents of the letters which Delia Nance claimed to have written to de-defendant, to prove their genuineness and that they were written by him.   (111 Wigmore on Ev., 2149, 2153; *Singleton v. Bremar, Harp.* [S. C.] 201.)

We find no reversible error in the record.   The judgment is therefore affirmed.

BARTCH, C. J., and STRAUP, J., concur.