The PEOPLE of the Territory of
Guam, Plaintiff–Appellee,

v.

Carlos B. CEPEDA,
Defendant–Appellant.

No. 87–1294.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 17, 1988.

Decided July 27, 1988.

---

Howard Trapp, Agana, Guam, for defendant-appellant.

Elizabeth Barrett–Anderson, Atty. Gen., Raymond T. Johnson II, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before GOODWIN, Chief Judge, and AL-DISERT * and NORRIS, Circuit Judges.

ALDISERT, Circuit Judge:

The major question for decision in this appeal from the Appellate Division of the District Court of Guam is whether the Superior Court of Guam's improper admission into evidence of nonexpert opinion testimony constituted harmless error. Appellant Carlos Cepeda was indicted by a territorial grand jury on eight counts of theft, four counts of forgery, and one count of inducing false testimony. He was tried before the Superior Court of Guam and convicted by a jury on all counts. The trial court imposed an extended term of imprisonment of 20 years for the theft counts, to run concurrently with a six-month sentence for inducing false testimony and four four-year sentences for forgery. The Appellate Division of the District Court of Guam affirmed Cepeda's convictions and sentence. We will reverse.

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

Jurisdiction in the Appellate Division was proper under 48 U.S.C. § 1424–3(a). Our jurisdiction on appeal is proper based on 48 U.S.C. § 1424–3(c). Cepeda timely filed his notice of appeal under Rule 4(b), Fed.R. App.P.

I.

Cepeda was employed as a loan officer by the Guam Economic Development Authority (GEDA) during 1982 and 1983. The jury found that he used this position to steal in excess of $36,000 of government funds. The government alleged that between June 19, 1982, and June 9, 1983, Cepeda obtained checks made out to various individuals and solicited Juan Cruz and others to cash the checks for him in exchange for $50 or $100. Eight checks were involved, each for an amount in excess of $1500. The government further alleged that on four separate occasions between September 25–30, 1983, Cepeda forged loan documents and used them to initiate processing of the GEDA checks. He was also accused of inducing Cruz to lie to investigators about who had given him the GEDA checks.

Under the Guam Code, the offense of theft is divided into various degrees. 9 Guam Code Ann. § 43.20(a)-(d). Theft constitutes a felony of the second degree if the amount involved exceeds $1500. Id. § 43.-20(a). "Theft not constituting a felony of the second or third degree or a misdemeanor is a petty misdemeanor." Id. § 43.20(d). Title 8 Guam Code Ann. § 105.54 provides:

When a defendant is charged with a crime which is distinguishable by degrees, the jury shall, upon a finding of guilt, also find the degree of the crime of which the defendant is guilty. If the jury agrees upon the guilt of the defendant but cannot agree upon the degree, it shall render that verdict, and the defendant shall be deemed guilty of the lowest degree of the crime charged.

At trial, the jury was not requested to, nor did it determine, the degree of the eight counts of theft. The trial court's special verdict slip did not require the jurors to determine whether the defendant

was guilty of a felony, a misdemeanor, or a petty misdemeanor. However, the court pronounced sentence as if the jury returned a guilty verdict for second degree felony theft.

On appeal, Cepeda contends that the trial court improperly allowed a government witness to offer lay opinion evidence based on samples of Cepeda's handwriting, when the samples were supplied to the witness by government subpoena for the purpose of testifying at trial. In addition, he argues that the maximum degree of theft for which he could be deemed guilty was a misdemeanor, that there was insufficient evidence to sustain a conviction for inducing false testimony, and that the court abused its discretion in imposing a 20-year sentence for property crimes constituting his first offenses.

## II.

We will first address the handwriting evidence question. At trial, the government called Raymond Rojas as its witness to determine whether Cepeda forged the signature of certain persons on various GEDA "Request for Funds and Order to Pay" forms. To enable Rojas to make this determination, the government obtained, by subpoena, samples of Cepeda's handwriting and then forwarded them to Rojas for use at trial. Rule 901(b)(2) of the Guam Rules of Evidence provides that an appropriate authentication or identification by a non-expert witness "as to the genuineness of handwriting [is admissible if] based upon familiarity *not acquired for purposes of the litigation.*" 6 Guam Code Ann. § 901(b)(2) (emphasis added). The trial court determined that Rojas did not qualify as an expert witness, but admitted his testimony as a nonexpert.

Whether Cepeda forged the signatures on the forms, a prelude to obtaining GEDA checks, was a critical issue in the forgery prosecutions. On the basis of the government's direct examination of Rojas, the trial court, in its discretion, could have found him to be an expert witness in the area of handwriting analysis. But the trial court determined that Rojas was not a handwriting expert because "a high school graduate taking 80 hours of instructions, who testified in four grand jury cases, and no actual trials, certainly cannot qualify as an expert witness." TT, vol. 2, at 133.

Rojas was an investigator for the forgery division of the Guam Department of Public Safety for approximately eleven years and had dealt primarily with questioned documents throughout his career. He received 80 hours of training from the Secret Service and the Federal Bureau of Investigation, and was the only police officer at the Department of Public Safety who was involved in document examination. He had applied his training in 300 separate instances involving questioned documents. During his testimony at trial, Rojas showed a thorough familiarity with and an ability to apply the basics of document examination: circumstances surrounding the writing, writing skill, handwriting format, letter sizes, upstrokes and downstrokes, and sketching. ER at 19–21; *see* E. Cleary, *McCormick on Evidence* § 221, at 689–91 (3d ed. 1984) (discussing authentication of writings through proof of handwriting).

■ Yet a trial court has wide discretion in determining whether a witness is qualified to testify as an expert. *See United States v. Marabelles,* 724 F.2d 1374, 1381 (9th Cir.1984); *United States v. Tsinnijinnie,* 601 F.2d 1035, 1040 (9th Cir.1979), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1880). Here, the trial court was not impressed by Rojas' experience during his tenure with the Department of Public Safety. The court also equated expertise with formal education and the number of times an individual has testified at trial.

The Appellate Division disagreed with the trial court's determination as to Rojas' lack of expert witness status, stating that "this court would have found Rojas to be an expert in handwriting analysis." E.R. at 54. The Appellate Division, however, ruled that the court did not abuse its discretion on the qualifications issue. It did determine that the trial court committed error in allowing Rojas to offer his lay opinion into evidence, because Rojas had obtained his familiarity with Cepeda's handwriting for the purpose of testifying at trial. It explained that Guam Rule of Evidence 901(b)(2) precludes nonexpert testimony as to the genuineness of handwriting if based on familiarity "acquired for purposes of the litigation."

We agree that the trial court erred in interpreting Rule 901(b)(2) by admitting

Rojas' nonexpert testimony notwithstanding the manner in which he received the handwriting exemplars that formed the basis of his opinion. It is unquestioned that Rojas' familiarity with Cepeda's handwriting was in fact "acquired for purposes of the litigation." Rojas obtained the handwriting exemplars by government subpoena (1) after the grand jury returned the indictment against the appellant, and (2) for the sole purpose of testifying at Cepeda's trial. Notwithstanding this clear violation of Rule 901(b)(2), however, the Appellate Division determined that the trial court's error was harmless "in that it did not effect the ultimate outcome of the case." E.R. at 55.

 On appeal, Cepeda argues that the Appellate Division erred in ruling that Rojas' nonexpert testimony was harmless error. The issue joined by the parties by brief and oral argument is clear, and allows us no leeway to consider other possibilities to validate the reception of the Rojas testimony. The litigants have presented solely a question of law: did the Appellate Division err in determining that the trial court's error was harmless? We apply a *de novo* standard in reviewing interpretations of Guam law made by the Appellate Division of the District Court of Guam. *Territory of Guam v. Yang,* 850 F.2d 507 (9th Cir.1988) (en banc).

### III.

 Cepeda does not base his argument on the due process clause of the United States Constitution. He does not ask us to apply the harmless error test of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), even though it probably would have been more generous to him:

> In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), this Court rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions. And since *Chapman,* "we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

*Rose v. Clark,* 478 U.S. 570, 576–78, 106 S.Ct. 3101, 3104–06, 92 L.Ed.2d 460 (1986); *see Satterwhite v. Texas,* — U.S. —, —,

108 S.Ct. 1792, 1795–97, 100 L.Ed.2d 284 (1988). Rather, Cepeda adheres to the deep-rooted doctrine that a federal court will not pass on constitutional questions unless such adjudication is unavoidable. *Harris v. McRae,* 448 U.S. 297, 306–07, 100 S.Ct. 2671, 2682–83, 65 L.Ed.2d 784 (1980); *Spector Motor Service, Inc. v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944). He relies on the teachings of *United States v. Valle–Valdez,* 554 F.2d 911, 916 (9th Cir.1977), where we noted that "[e]rrors in such matters as ... rulings on the admissibility of evidence where Fourth Amendment claims are not involved ... have been considered 'non-constitutional.'" In such cases, an appellate court must reverse the defendant's conviction unless it is more probable than not that the error did not materially affect the verdict. *Id.; see also* 8 Guam Code Ann. § 130.50(a) (errors not affecting a substantial right of the party shall be disregarded).

In the case at bar, Cepeda did not confess to forging the forms, and he made no admission inferring that he did. No eyewitnesses testified that he forged the forms. Instead, the government linked Cepeda to the forgeries essentially through Rojas' testimony:

> Q Now is the analysis that you have made based solely on those individual characteristics which you have mentioned in Mr. Cepeda's handwriting?
>
> A Right.
>
> Q And is there any doubt in your mind that it was he who wrote it?
>
> . . . .
>
> THE WITNESS: That Mr. Cepeda did write these documents?
>
> MR. PEREZ–SELSKY: The four documents in question, yes.
>
> THE WITNESS: I have no doubt that Mr. Cepeda did write the documents.

ER at 22.

The Rojas testimony was, therefore, critical to the government's forgery case against Cepeda. Other than opportunity to perform the illegal act and access to the GEDA forms, there was insufficient evidence linking him to the crime of forgery. Under these circumstances, we will not conclude that it was more probable than not that the Rojas testimony did not affect the jury's verdict. Accordingly, we decide that the reception of Rojas' opinion as a nonexpert witness was reversible, and not harmless, error, thereby entitling Cepeda

to a new trial. As we are unable to conclude that this evidence did not influence the jury's verdict on the other counts of the indictment, we will order a new trial on all counts. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 773–74 (9th Cir.1981) (appellate court has broad discretion to grant new trial on all or only some issues); *see Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931).

## IV.

■ Because we are ordering a new trial, we need not address Cepeda's contentions as to the length of sentence and the alleged error in sentencing on a felony rather than a misdemeanor. Double jeopardy considerations, however, require that we address Cepeda's remaining contention that he was entitled to a judgment of acquittal on the charge of inducing false testimony. The double jeopardy clause of the fifth amendment "protects against a second prosecution for the same offense after acquittal." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). If, in the first trial, Cepeda was entitled to a judgment of acquittal on the charge of inducing false testimony, the government is barred in the new trial from prosecuting him on the same charge. We conclude that the government is not so barred.

Cepeda argues that there was insufficient evidence to support the count charging a violation of 9 Guam Code Ann. § 52.50, which provides:

A person is guilty of a misdemeanor if he attempts to induce any person to give false testimony in or to withhold testimony from any official proceeding to which he has been or may be properly called as a witness, or to fail to attend any official proceeding to which he has been lawfully called as a witness.

The Appellate Division determined that there was sufficient evidence under Guam law to support the charge in the indictment. On appeal, our standard of review is *de novo*. *Territory of Guam v. Yang*, 850 F.2d 507 (9th Cir.1988) (en banc).

Sufficient evidence exists for a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see United States v. Michaels*, 796 F.2d 1112, 1118 (9th Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). Reversal is required only when "no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 317, 99 S.Ct. at 2788.

The grand jury's indictment charged that between September 25–30, 1983, Cepeda attempted to induce Juan Cruz to give false testimony regarding the receipt of GEDA checks in any official proceedings to which Cruz was called as a witness. ER at 4. At trial, Cruz testified that:

Carlos [Cepeda] came into my room and he took his wallet out. He was taking out a piece of paper which he took out from a newspaper, a picture. The picture was that of the late John Tuncap. He told me that in case someone asks about the checks, for me to say that it was Tuncap who has been giving me the checks.

TT, vol. 2, at 37–38. The question for decision is whether the words of this statement allow a rational trier of fact to conclude that Cruz was induced to give "false testimony in or to withhold testimony from any official proceeding" in which he was properly called as a witness.

In *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 118 (3d Cir. 1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981), the court stated:

Inferred factual conclusions based on circumstantial evidence are permitted only when, and to the extent that, human experience indicates a probability that certain consequences can and do follow from the basic circumstantial facts. The inferences that the court permits the jury to educe in a courtroom do not differ significantly from inferences that rational beings reach daily in informally accepting a probability or arriving at a conclusion when presented with some hard, or basic evidence. A court permits the jury to draw inferences because of this shared experience in human endeavors.

We have little difficulty in concluding that a reasonable jury could have inferred from Cruz' statements that Cepeda attempted to induce Cruz to give false testimony to anyone inquiring about the origin of the GEDA

checks—including individuals asking questions in official proceedings to which Cruz might be called as a witness. Viewing the evidence in the light most favorable to the government, *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, we agree with the Appellate Division that the government presented sufficient evidence to convict Cepeda under section 52.50 for inducing false testimony. Because Cepeda was not entitled to a judgment of acquittal, the government may properly prosecute him in the new trial on this charge.

## V.

For the reasons set forth, we will reverse the judgment of the District Court of Guam, Appellate Division, and remand this cause with a direction that the proceedings be returned to the Superior Court of Guam for a new trial on all counts.

REVERSED.