**STATE of Utah, Plaintiff and Appellee,**

v.

**Marvin Jean JACQUES, Defendant and Appellant.**

No. 950384–CA.

Court of Appeals of Utah.

Sept. 19, 1996.

Margaret P. Lindsay, Utah County Public Defender Assoc., Provo, for Defendant and Appellant.

Jan Graham, Atty. Gen. and Joanne C. Slotnik, Asst. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Plaintiff and Appellee.

Before ORME, P.J., and GREENWOOD and WILKINS, JJ.

## OPINION

ORME, Presiding Judge:

Defendant Marvin J. Jacques appeals his conviction for uttering a forged prescription. He contends the trial court erroneously admitted nonexpert opinion testimony of the genuineness of handwriting claimed to be his. We reverse defendant's conviction and remand for a new trial.

## FACTS

On September 27, 1994, an individual entered the Art City Pharmacy in Springville, Utah, seeking to fill a prescription for the narcotic, Percocet. The prescription was made out to James Brooks and signed by Dr. Darrel Olsen. Being suspicious of the spelling "Percoceth" in the prescription, the pharmacist's assistant asked her supervisor to look at the prescription. Attempts were made to contact Dr. Olsen to verify the prescription, but to no avail. The police department was subsequently contacted, but officers arrived after the customer had left the pharmacy. The police learned from witnesses at the pharmacy that the customer was an African–American male, approximately 6'2" tall, and drove a small red sports car.

Defendant Jacques was subsequently arrested and charged with uttering a forged prescription in violation of Utah Code Ann. § 58–37–8(4)(a)(iii) (1996), a third degree felony. At trial, the State tried to connect defendant to the forged prescription in several ways. In addition to showing that defendant had been in the office of Dr. Olsen's

partner on the previous day, met the general description of the customer who presented the prescription, and drove a red sports car, the State adduced the testimony of two handwriting witnesses. The first of these witnesses, an expert in comparative handwriting, administered a court-ordered handwriting exercise to defendant. At trial, this expert testified that he could not state conclusively, on the basis of the court-ordered specimen, whether the prescription was written by defendant. The expert opined that the specimen had been deliberately written to be at variance with defendant's usual penmanship.

The second handwriting witness was Sherry Ragan, a Utah County prosecutor with no expertise in the area of handwriting analysis. Ms. Ragan offered her opinion concerning the genuineness of defendant's handwriting in several documents allegedly penned and addressed by defendant to the prosecutor's office and to the trial court in the course of the present litigation. After hearing Ms. Ragan's testimony, the trial court found the writings to be authentic and admitted them into evidence. These supposedly authenticated samples of defendant's handwriting were later compared by the handwriting expert to the handwriting on the forged prescription. On the basis of these samples, the expert was able to testify conclusively that the forged prescription was written by defendant.

The jury returned its verdict of guilty, and the trial court sentenced defendant to an indeterminate term of imprisonment not to exceed five years.

## STANDARDS OF REVIEW

■ In reviewing a trial court's decision to admit evidence, we apply several standards of review. *State v. Thurman*, 846 P.2d 1256, 1270 n. 11 (Utah 1993). *See also State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991) (stating that several standards of review must be employed given that the trial court's determination of admissibility involves both legal and factual conclusions). In determining whether the trial court properly admitted the opinion of a nonexpert for authentication purposes, a matter governed by Rule 901 of

the Utah Rules of Evidence, we first apply a correction of error standard to the legal content of that decision. *See State v. Horton*, 848 P.2d 708, 714 (Utah App.) (applying correctness standard to issue of whether trial court properly excluded photograph of car trunk), *cert. denied*, 857 P.2d 948 (Utah 1993). In making this determination, "we examine (1) whether the trial court selected the correct rule of evidence, (2) whether the trial court correctly interpreted that rule, and (3) whether the trial court correctly applied the rule." *Id.* at 713.

■ After reviewing the trial court's legal decision for correctness, we apply an abuse of discretion standard in determining whether the trial court reasonably determined the nonexpert witness properly authenticated the writing samples pursuant to Rule 901. *Id.* at 714. Even if we find error in the decision to admit evidence, such decision does not result in reversible error unless the error is prejudicial. *See State v. Villarreal*, 857 P.2d 949, 957 (Utah App.1993), *aff'd*, 889 P.2d 419 (Utah 1995).

## ISSUES ON APPEAL

■ We must decide whether the trial court erred in admitting the testimony of a nonexpert to authenticate handwriting samples, when the witness had not personally observed the actual writing of such samples. Beyond this threshold question, defendant contends the State failed to adequately prove the nonexpert's familiarity with defendant's handwriting and the origin of that familiarity, as required by Rule 901(b)(2) of the Utah Rules of Evidence. The State counters that the origin of the nonexpert's familiarity with defendant's handwriting was sufficiently proven to support a finding of admissibility, and that, in any event, any error in permitting the challenged testimony was harmless.

## AUTHENTICATION UNDER
## RULE 901(b)(2)

■ The general rule governing the admissibility of writings or other documentary evidence is that the proponent, prior to introducing such evidence, must first authenticate the evidence by showing that it is what the

proponent claims it to be. Utah R.Evid. 901(a); *State v. Horton*, 848 P.2d 708, 714 (Utah App.), *cert. denied*, 857 P.2d 948 (Utah 1993). This process of authentication must be distinguished from a finding of authenticity. Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence* § 9.2, at 1124 (1995). In their recent treatise, Mueller and Kirkpatrick explain that the process of authentication "deals ... with the foundation required for admitting evidence, and the adequacy of that foundation is determined by the trial judge." *Id.* They also state that although the jury is ultimately responsible for determining whether the evidence is in fact authentic once the evidence is admitted, the court must fulfill its screening function under Rule 104(b),[1] which requires the trial court "to assess whether there is evidence sufficient to support a jury finding of authenticity." *Id.* at 1124 (citations omitted). *See also State v. Ramirez*, 817 P.2d 774, 778 (Utah 1991) (distinguishing trial court's role in making "any necessary preliminary factual findings" in order to reach legal conclusions concerning admissibility of evidence from jury's role in crediting or discrediting admitted evidence); Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* 1–27 (1996) (stating resolution of fact questions surrounding admissibility generally entrusted to judge).

Utah Rule of Evidence 901(b) provides, by way of illustration, several possible methods for authenticating a writing. Specifically, Rule 901(b)(2) provides that a trial court may allow a nonexpert witness to state an opinion as to the authenticity of handwriting, provided that two requirements are satisfied: first, that the witness is shown to be familiar with the handwriting, and second, that it is established the witness's familiarity was not gained for purposes of the litigation.[2]

■ As to the first requirement, it is inconsequential for the trial court's determination whether the nonexpert has personally observed the person put pen to paper or exactly how many times the nonexpert has actually seen the person's handwriting; such facts go only to the weight accorded the evidence by the jury. *See, e.g., United States v. Binzel*, 907 F.2d 746, 749 (7th Cir. 1990). *Cf. State v. Freshwater*, 30 Utah 442, 447, 85 P. 447, 448 (1906) (stating it is "settled that no great degree of familiarity with handwriting is required to render a witness competent to give an opinion. If he has seen the person write a single time, it has generally been held sufficient.") (citation omitted).

■ Although there is no requirement that the nonexpert personally observe the act of writing, Rule 901(b)(2) does require that the nonexpert have an adequate familiarity with the person's handwriting. The adequacy of familiarity may be present " 'if [the witness] has seen writings *purporting* to be those of the person in question under circumstances indicating their genuineness.' " *United States v. Standing Soldier*, 538 F.2d 196, 202 (8th Cir.) (quoting Edward W. Cleary, *McCormick's Handbook of the Law of Evidence* § 221, at 547 (2d ed. 1972)), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).

■ The second requirement under Rule 901(b)(2) mandates that any familiarity with the person's handwriting not have been obtained for purposes of the present litigation. *See People v. Cepeda*, 851 F.2d 1564, 1566–67 (9th Cir.1988) (holding rule was violated when witness's familiarity with de-

---

1. Rule 104(b) of the Utah Rules of Evidence provides as follows:

   **Relevancy conditioned on fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

2. Rule 901 of the Utah Rules of Evidence provides as follows:

   (a) **General provision.** The requirement of authentication or identification as a condition

precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

   (b) **Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

   . . . .

   (2) **Nonexpert opinion on handwriting.** Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

fendant's handwriting was acquired after indictment was returned and for sole purpose of testifying at defendant's trial). *See also United States v. Pitts*, 569 F.2d 343, 348 (5th Cir.) (affirming trial court's exclusion of nonexpert's opinion concerning signature on a receipt when nonexpert made "one-shot" comparison with a genuine signature for purposes of pending criminal investigation), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978). Under the second prong of 901(b)(2), a nonexpert may not offer an opinion as to the genuineness of handwriting if it is established that the witness gained familiarity for purposes of testifying in an action in which the handwriting is at issue. In other words, the witness's familiarity with the handwriting must predate the present litigation.

In the instant case, the nonexpert called to authenticate the writings at issue was Ms. Ragan, an attorney in the very office that was prosecuting defendant. Ms. Ragan began her testimony out of the jury's presence by stating that she knew defendant from past contact with him. Ms. Ragan testified that she had seen defendant's handwriting in certain documents he filed with the trial court in past prosecutions. Ms. Ragan was then shown two writings: a letter written to the prosecutor in the present action and the envelope in which the letter was sent. Upon being shown these items, Ms. Ragan offered her opinion that the handwriting contained in the letter and on the envelope was that of defendant.[3]

As a whole, Ms. Ragan's testimony indicates that she met the first prong of Rule 901(b)(2), even though she had never witnessed defendant in the act of writing. Her testimony establishes that she did possess some degree of familiarity with defendant's handwriting. Although Ms. Ragan demonstrated her general familiarity with defendant's handwriting, her testimony wholly fails to satisfy the second prong of Rule 901(b)(2).

To satisfy this second prong, the prosecution had to demonstrate that Ms. Ragan's ability to identify defendant's handwriting predated the present litigation, i.e., that she did not gain such familiarity specifically for purposes of preparing to testify in the present action. *See Cepeda*, 851 F.2d at 1567; *Pitts*, 569 F.2d at 348. Her testimony is insufficient in this respect because it fails to dispel the possibility—especially distinct given the fact that she works as a deputy county attorney who has prosecuted defendant in the past—that she simply pulled defendant's files from past prosecutions and compared his handwriting found therein to the handwriting on the letter and envelope submitted in the present prosecution, all for the sole purpose of testifying in this litigation at the request of her fellow prosecutor.

Accordingly, given the deficiency in Ms. Ragan's testimony, we must conclude that the court erred in admitting the letter and envelope which were then used by the expert for purposes of comparison with the forged prescription.

## HARMLESS ERROR

We must still decide whether the trial court's error in admitting Ms. Ragan's authentication testimony was harmless. The doctrine of harmless error applies to " 'errors which, although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.' " *State v. Villarreal*, 857 P.2d 949, 957–58 (Utah App. 1993) (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)), *aff'd*, 889 P.2d 419 (Utah 1995). For an error to require reversal, "the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987).

---

3. Ms. Ragan later testified to her opinion in the presence of the jury, but was careful not to disclose that she had prosecuted defendant on prior occasions. Ms. Ragan testified that she was a local attorney who knew defendant from unspecified prior dealings and that she was familiar with defendant's handwriting. Again, over defendant's objection, the trial court allowed Ms. Ragan to state her opinion that the handwriting in the envelope and letter belonged to defendant.

■ In determining whether reversal is required, several factors are considered, including "'the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence co[rro]borating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *State v. Hackford,* 737 P.2d 200, 205 (Utah 1987) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)).

In the instant case, the prosecution attempted to connect defendant to the forged prescription by showing the jury, through expert testimony, that the handwriting in several past letters and documents allegedly penned by defendant was the same as the handwriting in the forged prescription. The first proffered sample of defendant's handwriting was the specimen ordered by the trial court prior to trial. The specimen contained letters of the alphabet and various words, all written by defendant. After proper authentication, the State's expert testified that the specimen shared 18–20 points of common identification with the prescription—not enough on which to base an opinion that the prescription was definitely written by defendant.

The second sample of handwriting used for comparison by the expert consisted of the items analyzed by Ms. Ragan. After Ms. Ragan's purported authentication of these writings and their admission into evidence, the State's expert testified that all 32 points of common identification were present. Therefore, the expert concluded that the handwriting in the documents authenticated by Ms. Ragan and the handwriting in the forged prescription definitely belonged to the same person, namely defendant.

Thus, Ms. Ragan was a critical witness for the State. Her testimony led to the admission into evidence of the very handwriting samples which allowed the State's expert to make a conclusive comparison with the forged prescription. The jury also heard her state she was familiar with defendant's writing and that the letter and envelope considered by the expert appeared to have been written by defendant. Finally, her testimony enabled the jury to conduct its own comparison of the handwriting in the forged prescription and in the specimens she authenticated. *See* Utah R.Evid. 901(b)(3) (allowing trier of fact to make its own comparison with authenticated specimens of handwriting). Had Ms. Ragan been precluded from authenticating the writings at issue, the expert would have been left with only the problematic court-ordered sample to compare with the prescription. Although the court-ordered sample contained 18–20 points of common identification with the prescription, it was not nearly as incriminating as the comparison with the samples authenticated by Ms. Ragan, which contained all 32 possible points of common identification. Thus, there is a reasonable likelihood that the jury would have returned a verdict in favor of defendant in the absence of Ms. Ragan's testimony and the resulting evidence.[4] Therefore, we cannot conclude that the court's error in admitting Ms. Ragan's testimony was sufficiently inconsequential as to constitute harmless error.

This conclusion is especially compelling in view of the overall strength of the State's case. The State presented the testimony of several other witnesses. Although these witnesses testified that they saw a male resembling defendant in the pharmacy on the day in question, and that defendant had the opportunity to obtain blank prescription pads,[5] none of these witnesses could make a positive

---

**4.** It should be noted that appellate courts are especially reluctant to find errors harmless when they concern opinions given by experts, *see, e.g., State v. Iorg,* 801 P.2d 938, 941–42 (Utah App. 1990), given the perception that jurors tend to give great weight to such testimony. Although Ms. Ragan was not herself an expert, her authentication testimony paved the way for the expert's ultimate opinion that defendant forged the pre-

scription, the single most incriminating part of the State's case.

**5.** The State presented the testimony of Dr. Bateman. Dr. Bateman testified that on September 26, 1994, he had treated defendant for a sprained knee and prescribed defendant "Lodine," an anti-inflammatory drug. Dr. Bateman testified that at the time of this treatment, defendant had been left alone in the examination room for a few

identification of defendant as the person passing the forged prescription.

## CONCLUSION

Before allowing Ms. Ragan to provide authentication testimony on the samples of defendant's handwriting, the trial court should have required testimony as to the origin of Ms. Ragan's familiarity with defendant's handwriting, and, in particular, whether it was acquired for purposes of this litigation. Because Ms. Ragan's testimony is completely lacking in this regard, the trial court erred in admitting Ms. Ragan's authentication testimony and related evidence. This error was not harmless. Therefore, we reverse defendant's conviction and remand for a new trial.

GREENWOOD and WILKINS, JJ., concur.

minutes, which is customary in the doctor's office, and that the room had contained blank     prescription pads.