2014 UT App 162

**STATE of Utah, Plaintiff and Appellee,**

v.

**Eric D. WOODARD, Defendant and Appellant.**

No. 20120927–CA.

Court of Appeals of Utah.

July 10, 2014.

Samuel P. Newton, for Appellant.

Sean D. Reyes and Brett J. DelPorto, Salt Lake City, for Appellee.

Judge GREGORY K. ORME authored this Opinion, in which Judge STEPHEN L. ROTH and Senior Judge PAMELA T. GREENWOOD concurred.[1]

ORME, Judge:

¶ 1 A jury convicted Eric D. Woodard (Defendant) of possession of a controlled substance with intent to distribute, a second degree felony. He now appeals that conviction, arguing that fingerprint evidence was improperly admitted and that the expert witness who testified about the fingerprint evidence was unreliable. We affirm.

## BACKGROUND [2]

### The Search

¶ 2 In 2009, North Ogden police obtained a warrant to search Defendant's home but did not execute it immediately. Police officers went to Defendant's residence eight days later in response to a noise complaint. The officers detained Defendant outside while they attempted to get inside to search the home. However, a group of eight to ten house guests, several of whom were visiting from California, remained inside the home and "weren't cooperating with the efforts to serve the warrant." After several hours and multiple attempts to lure the guests out of the home, the police forcibly entered and began to search the house.

¶ 3 During the search, officers discovered, among other things, a small bag of marijuana, a digital scale, and cigarette rolling papers. Defendant stipulated at trial that these items belonged to him.

¶ 4 Officers also found a large plastic bag full of pills in a shoebox in Defendant's closet. The bag contained 478 pills of "Obama ecstasy." [3] The pills were shaped like the head of President Barack Obama, and none of the officers had heard of this particular drug or previously seen it in Utah. Defendant denied having any knowledge of the pills.

### The Trial

¶ 5 At Defendant's trial, the State introduced testimony from an expert who took a fingerprint from the bag containing the Obama ecstasy and another expert who matched that fingerprint to one taken from Defendant when he was booked into jail. Sandra Grogan, a crime scene examiner, testified that she processed the bag with superglue fumes causing a latent fingerprint to turn white for better visibility. She also photographed the print a number of times with different lighting conditions and angles. After processing the fingerprint and taking photographs, Grogan uploaded the photographs to a database called the Digital Image Management System (DIMS). All of the original photos were admitted into evidence without objection.

¶ 6 Paul Rimmasch, another crime scene investigator and a certified latent fingerprint examiner, then testified about his examination of the fingerprint. He testified that Grogan provided him with her photos of the latent print as well as a card, often referred to as a ten-print card, containing Defendant's known fingerprints, taken when he was booked into jail. Rimmasch testified that he

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as neces- sary to understand issues raised on appeal." *State v. Daniels,* 2002 UT 2, ¶ 2, 40 P.3d 611.

3. "Obama ecstasy" is not actually ecstasy, but an ecstasy mimic that contains benzylpiperazine, a Schedule I controlled substance. *See* Utah Code Ann. § 58–37–4(2)(a)(i)(I) (LexisNexis Supp. 2013).

found seventeen matching points between the latent fingerprint and one of Defendant's fingerprints from the ten-print card. He also stated that while there are no national standards requiring a certain number of matching points, ten matching points is considered all but conclusive and at twelve matching points the odds "exceed the population of the earth that it could be anyone else." Based on the seventeen matching points that Rimmasch identified between the latent print and the ten-print card, he concluded that the print on the baggie belonged to Defendant.

¶ 7 Rimmasch attempted to illustrate his findings with an exhibit showing a side-by-side comparison of an image of the fingerprint from the bag and an image of the fingerprint from the ten-print card (Exhibit 15). Defendant's trial counsel questioned Rimmasch extensively about the source of the images on Exhibit 15. Rimmasch explained that the first image came from the ten-print card and that he had the card with him in court. He testified that he received the card from Grogan and that the prints were originally taken by Officer Cory Stark, whose name was written on the back of the card.

¶ 8 Trial counsel then questioned Rimmasch about the source of the other fingerprint displayed in Exhibit 15. Rimmasch testified that after Grogan processed the bag, she put the images on the DIMS database, and Rimmasch "retrieved that image from DIMS." Trial counsel then turned to asking Rimmasch if he knew exactly which photograph from the group taken by Grogan he had used in his comparison. Rimmasch responded that it would take some time, but that he might be able to ascertain the particular photograph he used.

¶ 9 The trial court then asked Defendant's trial counsel if he was planning to allow the State "to try and lay the appropriate foundation for [Rimmasch's] testimony." Trial counsel answered, "Well, I'm going to challenge it, your Honor. I don't—he can't testify where this image came from. . . . So I'm going to move to strike the admission of [Exhibit 15] as an inadequate foundation." The State then responded,

Ms. Grogan testified earlier today that she took the photograph that she processed and documented and that she gave the photograph to Mr. Rimmasch to compare. I can get her back here and ask her where she got the ten print card and lay some additional foundation with her. . . . I think that Mr. Rimmasch has testified that he has an original ten print card, and I can try to lay some more foundation with that. I'm not certain if it will suffice for the Court.

¶ 10 Finally, the trial court ruled, "Well, at least for now the Court is going to sustain [trial counsel's] objection, but I will grant you some time to perfect this matter. So maybe you can cure it. We'll just see." The State then asked Rimmasch about the identifying information on the ten-print card from which one of the Exhibit 15 images was taken. Trial counsel also objected to this line of questioning as lacking foundation. The trial court stated,

There may be other information on [the ten-print card] that he can testify to, and certainly he can read it. He's certainly— what has been sustained is that he can't make a comparison until we can guarantee that that ten print card has any meaning in this particular case. . . . [T]he objection is overruled.

The State continued questioning Rimmasch about the identifying information on the ten-print card—which included the name of the jail where the fingerprints were collected, the date and time of collection, the name of the officer who took the prints, an FBI tracking number, the date of arrest, and Defendant's address. Trial counsel then stipulated to the admission of the ten-print card, "subject to the State being able to in the future verify that that in fact was taken from [his] client." The trial court replied, "[L]et me just ask a question. Is the client—is [Defendant's] name on the document anywhere?" And Rimmasch responded, "Yes, it is, and also his Social Security number and date of birth." A few moments later, a discussion occurred at the bench off the record, and the trial court instructed the State to proceed, at which point the State asked Rimmasch if he had verified that the image on Exhibit 15 was

the same as the image on the ten-print card. Rimmasch replied affirmatively. When the State then moved to admit Exhibit 15, Defendant's trial counsel stated, "No objection at this time, your Honor." The State also moved to admit the ten-print card into evidence, and again trial counsel had no objection. The original images of the fingerprint taken from the bag had already been admitted without objection.

¶ 11 Rimmasch continued his testimony, explaining the methodology he used in examining the fingerprint evidence. He noted that "there isn't a national standard on how everything should be done" but there "is one overarching kind of practice that is advocated throughout, and that's the ACE–V methodology." The acronym "ACE–V" stands for the steps that an analyst must take when evaluating fingerprints: analyze, compare, evaluate, and verify. Rimmasch then described the process in some detail, including the final step—verify—where "another examiner goes through the same process [as the original examiner] and looks at the print again." The State then asked, "Is that what happened on this print?" Rimmasch replied, "Yes." Later, Rimmasch explained the verification step further, noting, "[N]othing would leave our office with just one person having compared it. It always needs a verifier. . . . [N]o print would leave the office, no arrests would be made without a verification."

¶ 12 At the close of the State's case, Defendant's trial counsel moved for a directed verdict. Specifically, trial counsel moved to strike all testimony regarding the fingerprint evidence because he alleged that the crime scene analysts failed to follow the ACE–V protocol. Without the fingerprint evidence, he claimed, the State had not met its evidentiary burden and a directed verdict was appropriate. The trial court denied the motion to strike the fingerprint testimony because the court concluded that any potential problems with the fingerprint-analysis protocol went "to the weight of that evidence and not to its admissibility" and could have been attacked by Defendant's counsel by calling his own expert witness. The court also de-

nied the motion for directed verdict because the State had presented at least a prima facie case.

¶ 13 The jury convicted Defendant of possession of a controlled substance with intent to distribute, a second degree felony, and possession of marijuana and possession of drug paraphernalia, both class B misdemeanors. Defendant appeals only the conviction of possession of a controlled substance with intent to distribute.

## ISSUES AND STANDARDS OF REVIEW

¶ 14 Defendant first contends that the trial court erred in admitting fingerprint evidence that he claims lacked foundation. "A trial court's determination that there was a proper foundation for the admission of evidence . . . [is reviewed for] an abuse of discretion." *State v. Burke*, 2011 UT App 168, ¶ 17, 256 P.3d 1102 (alterations in original) (citation and internal quotation marks omitted). This means that we will reverse the trial court's decision to admit evidence only if the ruling is beyond the limits of reasonability. *Id.*

¶ 15 Defendant also argues that the trial court erred in failing to exclude expert testimony. "The trial court has wide discretion in determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard." *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993). We will only reverse the trial court's decision to admit expert testimony if the decision exceeds the limits of reasonability. *Id.*

## ANALYSIS

### I. The Trial Court Did Not Err in Admitting the Fingerprint Evidence.

¶ 16 Defendant claims that the trial court should not have admitted Exhibit 15 because it was not properly authenticated under rule 901 of the Utah Rules of Evidence.[4] "[T]he process of authentication

---

4. Defendant frames his appeal as a challenge to the sufficiency of the evidence. However, he

recognizes in his brief that his challenge to the sufficiency of the evidence depends on our con-

deals ... with the foundation required for admitting evidence, and the adequacy of that foundation is determined by the trial judge." *State v. Jacques,* 924 P.2d 898, 901 (Utah Ct.App.1996) (citation and internal quotation marks omitted). Rule 901 requires that the proponent of an item of evidence authenticate or identify it with "evidence sufficient to support a finding that the item is what the proponent claims it is." Utah R. Evid. 901(a). The rule also provides a nonexhaustive list of means by which authentication can be achieved. For example, rule 901 provides for authentication by the testimony of a witness with knowledge "that an item is what it is claimed to be." *Id.* R. 901(b)(1). It also allows authentication based on the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* R. 901(b)(4).

¶ 17 "Proper authentication does not require conclusive proof but, instead, requires only that the trial court determine that there is 'evidence sufficient to support a finding of the fulfillment of [a] condition' of fact." *State v. C.D.L.,* 2011 UT App 55, ¶ 24, 250 P.3d 69 (quoting Utah R. Evid. 104(b) (2011)) (alteration in original). *See also* Fed. R.Evid. 901 advisory committee notes (explaining that the "requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)"). Therefore, "the jury is ultimately responsible for determining whether the evidence is in fact authentic once the evidence is admitted," but the trial court "must fulfill its screening function under rule 104(b)." *Jacques,* 924 P.2d at 901.

¶ 18 The trial court originally sustained the objection of Defendant's trial counsel but granted the State time to lay foundation for the admission of Exhibit 15. Defendant now contends that this foundation was never laid, Exhibit 15 was never authenticated, and the fingerprint evidence was therefore improperly before the jury. We disagree.

¶ 19 The trial court had sufficient evidence before it to support a finding that both images on Exhibit 15 were what the State claimed they were. *See* Utah R. Evid. 901. First, both Grogan and Rimmasch testified about the source of the fingerprint image taken from the bag found in Defendant's bedroom. Grogan testified that she enhanced the fingerprint with superglue vapor, photographed the fingerprint a number of times, and loaded those photos onto the DIMS database. Rimmasch then testified that he retrieved the image from the DIMS database and used that image for his comparison with the fingerprints from the ten-print card. This testimony squares with the rule 901 option of authenticating evidence by testimony of a witness with knowledge "that an item is what it is claimed to be." *See id.* R. 901(b)(1).

¶ 20 Next, the image taken from the ten-print card was authenticated both by Rimmasch's testimony and by the "appearance, contents, substance, internal patterns, or other distinctive characteristics" of the card, which was itself admitted into evidence, "taken together with all the circumstances." *See id.* R. 901(b)(4). Rimmasch testified that the card contained a number of identifying characteristics, such as the name of the jail where the fingerprints were collected, the date and time of collection, the name of the officer who took the prints, an FBI tracking number, the date of arrest, and Defendant's address. Then, in response to an objection by Defendant's trial counsel and a question from the trial court, Rimmasch further noted that the card contained Defendant's name, social security number, and date of birth. Once Rimmasch made clear that the image he used to create Exhibit 15 came from the ten-print card, the ten-print card itself was entered into evidence.

¶ 21 We conclude that Exhibit 15, as well as the fingerprint images from which Exhibit 15 was created, were properly authenticated under rule 901 of the Utah Rules of Evidence, and therefore the trial court "fulfill[ed] its screening function under rule

---

cluding that the fingerprint evidence was improperly admitted. Because we conclude that the fingerprint evidence was properly before the

jury, we do not further discuss Defendant's sufficiency of the evidence claim.

104(b)." *See State v. Jacques*, 924 P.2d 898, 901 (Utah Ct.App.1996).[5]

## II. The Trial Court Did Not Err in Allowing Expert Testimony About the Fingerprint Comparison.

¶ 22 Defendant next contends that the State's fingerprint expert did not meet the reliability standards set forth in rule 702 of the Utah Rules of Evidence. Defendant argues that because the ACE–V protocol requires verification by a second fingerprint examiner as its final step, the State should have been required to produce the second examiner to testify about the procedures used in verifying Rimmasch's conclusions. Defendant also contends that even if Rimmasch properly followed the ACE–V protocol, the methodology is not sufficiently reliable.

¶ 23 Rule 702 "assigns to trial judges a 'gatekeeper' responsibility to screen out unreliable expert testimony." Utah R. Evid. 702 advisory committee notes. Thus, under rule 702 the State must make a "threshold showing that the principles or methods that are underlying in the testimony (1) are reliable, (2) are based upon sufficient facts or data, and (3) have been reliably applied to the facts." *Id.* R. 702(b). This threshold showing "is satisfied if the underlying principles or methods, including the sufficiency of facts or data and the manner of their application to the facts of the case, are generally accepted by the relevant expert community." *Id.* R. 702(c). And rule 702's threshold showing "requires only a basic foundational showing of indicia of reliability for the testimony to be admissible, not that the opinion is indisputably correct." *Id.* R. 702 advisory committee notes. We conclude that an adequate threshold showing was made in this case.

¶ 24 Rimmasch testified that while "there isn't a national standard on how everything should be done," there "is one overarching kind of practice that is advocated throughout,

and that's the ACE–V methodology." Rimmasch explained that there are four steps involved in the ACE–V protocol—analyze, compare, evaluate, and verify—and testified that he followed each of these steps in comparing Defendant's known fingerprint with the fingerprint found on the bag of Obama ecstasy. Rimmasch also emphasized that his office always completed the verification step, noting, "[N]othing would leave our office with just one person having compared it. It always needs a verifier.... [N]o print would leave the office, no arrests would be made without a verification."

¶ 25 This testimony provides a basic foundational showing that the underlying methods and principles applied to analyze Defendant's fingerprints are "generally accepted by the relevant expert community" and therefore sufficiently reliable to be presented to the jury. *See id.* R. 702(b)-(c). And we agree with the trial court that the failure of the State to call the ACE–V verifier as an additional expert witness is not relevant to Rimmasch's reliability as an expert but instead goes to the weight and credibility of his testimony, which is to be evaluated by the jury. *See State v. Clayton*, 646 P.2d 723, 726–27 (Utah 1982).

¶ 26 Defendant nonetheless maintains that fingerprint analysis is inherently unreliable and points to publications from the National Academy of Sciences and its operational arm, the National Research Council, that have recently noted a lack of empirical validation of fingerprint evidence and specifically questioned the efficacy of the ACE–V methodology. While this information indicates that the science of fingerprint examination may continue to evolve, it does not establish the unreliability of the ACE–V protocol relied on in this case. When applying rule 702, "judges should approach expert testimony with 'rational skepticism.'" *Eskelson ex rel. Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶ 12, 242 P.3d 762 (quoting Utah R. Evid. 702 advisory committee notes). But the degree of scrutiny that should be applied

---

5. Defendant also contends that he received ineffective assistance of counsel because his trial counsel failed to renew his objection to the admission of Exhibit 15 at the close of the State's case. However, we have concluded that Exhibit 15 was properly admitted, and therefore, any objection to its admission would have been futile. "Failure to raise futile objections does not constitute ineffective assistance of counsel." *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546.

to expert testimony by trial judges " 'is not so rigorous as to be satisfied only by scientific or other specialized principles or methods that are free of controversy or that meet any fixed set of criteria fashioned to test reliability.' " *Id.* (quoting Utah R. Evid. 702 advisory committee notes). Therefore, although there is, as Rimmasch testified, no specific national standard for fingerprint analysis, and although there may be organizations calling for the use of more precise fingerprint identification procedures, Rimmasch's testimony that ACE–V is an "overarching kind of practice that is advocated throughout" the country satisfied the *threshold* showing of reliability required under rule 702.

¶ 27 Additionally, a threshold showing "marks only the *beginning* of a reliability determination." *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power,* 2012 UT App 20, ¶ 33, 269 P.3d 980 (emphasis in original). "The court's role is only preliminary; the factfinder bears the ultimate responsibility for evaluating the accuracy, reliability, and weight of the testimony." *Id.* ¶ 47. Defendant's trial counsel had full opportunity to challenge the ACE–V methodology and Rimmasch's credibility on cross-examination,[6] to ascertain the identity of the verifier Rimmasch used and endeavor to call him or her as a witness, or to call his own expert witness to testify about the fingerprint analysis done in this case or about potential problems with fingerprint analysis in general.[7] *See Clayton,* 646 P.2d at 726–27. *See also* Utah R. Evid. 702 advisory committee notes (noting that the rule "is broad

enough to permit testimony that is the product of competing principles or methods in the same field of expertise" and explaining that "[c]ontrary and inconsistent opinions may simultaneously meet the threshold; it is for the factfinder to reconcile—or choose between—the different opinions").

¶ 28 Defendant alternatively contends that Rimmasch's testimony about the results of the independent verification step of the ACE–V protocol was inadmissible hearsay. But Defendant's trial counsel never advanced this objection before the trial court in such a way that the trial court had an opportunity to rule on it. *See 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801. While trial counsel objected generally to the expert's testimony, a hearsay objection was never specifically raised. Therefore, Defendant's hearsay arguments are not preserved for appeal.[8]

## CONCLUSION

¶ 29 The trial court properly admitted the fingerprint evidence contained in Exhibit 15 under rules 901 and 104 of the Utah Rules of Evidence. Additionally, the expert testimony met the threshold reliability requirements of rule 702(b).

¶ 30 Affirmed.

---

6. Trial counsel did not do much to elicit information that might have prompted the jury to give Rimmasch's testimony less weight. He did not, for instance, try to get Rimmasch to admit that he did not know if the independent verification step was actually completed in this case. He did not point out that the records Rimmasch relied on did not include any details confirming when the verification was done or by whom. He did not even ask Rimmasch if he recalled who actually did the verification in this case.

7. The trial court focused on this latter point, stating that an "assault on the methodology used by the State ... would require an expert witness from the defense that could come in and testify that the procedures were faulty for this or that reason." This statement did not improperly shift the burden of persuasion to Defendant, as he

contends, but was merely an indication as to how his trial counsel could have gone about undercutting Rimmasch's testimony.

8. Defendant's brief contains a footnote stating that "to the extent defense counsel did not object to Rimmasch's hearsay statement that the results were verified, he was ineffective." However, in order to meet his burden of persuasion, Defendant must lay out his "contentions and reasons ... with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." *See* Utah R.App. P. 24(a)(9). Defendant's perfunctory argument that his trial counsel should have objected to Rimmasch's testimony on hearsay grounds, without more, does not meet this burden.